HORACE H. BLANTON, Respondent, v. ANDREW J. KING, Appellant.

### Kansas City Court of Appeals, January 10, 1898.

Contracts: PARTICULAR SERVICE: ABANDONMENT: ATTORNEYS. Where one contracts for an indefinite time until a particular service is accomplished, he can not recover where he willfully and without cause abandons the work before the expiration of the time for the performance of the service; and this rule is especially applicable to the engagement of attorneys with their clients.

*Appeal from the Vernon Circuit Court.*—HON. D. P. STRATTON, Judge.

REVERSED AND REMANDED.

*Andrew J. King* for appellant.

When one person contracts to labor for another for a specified term, or for a particular service, and leaves the service of his employer before the expiration of such term, or the completion of such service, without any cause proceeding from the employer or the act of God, he can not maintain an action for the value of the services he has rendered. *Earp v. Tyler*, 73 Mo. 617; *Gruetzner v. Furniture Co.*, 28 Mo. App. 263; *Moore v. Mfg. Co.*, 113 Mo. 98; *Banse v. Tate*, 62 Mo. App. 150; *Leveridge v. Lipscomb*, 36 Mo. App. 630; *Edwards v. Meyers*, 22 Mo. App. 481; *Hanel v. Freund*, 17 Mo. App. 618; *White v. Wright*, 16 Mo. App. 551.

*S. A. Wight* and *W. M. Bowker* for respondent.

Neither the testimony of respondent nor appellant shows any such contract of employment as would

have warranted the court in giving instructions numbers 2 and 7.

GILL, J.—In August, 1892, three suits—two criminal and one civil—were pending in the circuit court of Vernon county against the above named defendant King. Plaintiff Blanton, an attorney at law, was engaged by King to assist in the defense. Blanton entered upon the service and continued therein until in November, 1893, when he quit. Blanton says he was discharged, while King's evidence is to the effect that Blanton voluntarily abandoned the service. During the time Blanton was assisting in the defense the two criminal cases were finally disposed of, but the other, or civil case, was still pending in the Bates circuit court, where it had been taken by change of venue. After November 13, 1892, Blanton did nothing further in the civil suit, and King was represented by other attorneys, who tried the case in the circuit court, and as well attended to the same in the supreme court where it was taken by appeal.

This is an action in *quantum meruit* for the alleged value of services thus performed by the plaintiff. The petition alleges the work performed to be of the value of $2,000, crediting the same with $250 admitted to have been paid by defendant, and asks judgment for the balance of $1,750.

The answer admits the service, but says it was worth no more than the $250 paid; and further sets up a special contract between plaintiff and defendant, whereby plaintiff obligated himself to follow up and attend to said litigation through all the courts, and to the end thereof, but that plaintiff failed and refused so to do and without cause abandoned the same before its termination.

The jury returned a verdict for plaintiff in the

sum of $675 and from a judgment thereon defendant appealed.

It is the well settled law of this state that where a party contracts with another to work for a definite period of time, or to labor until a particular service is accomplished, said party can not recover anything when it shall appear that he willfully and without cause abandoned the work before the expiration of the time, or before the performance of the particular service. *Earp v. Tyler*, 73 Mo. 617; *Gruetzner v. Ande Fur Co.*, 28 Mo. App. 263, and cases cited.

CONTRACTS: particular service: abandonment: attorneys.

As said by Judge ROMBAUER in case last cited, "this has always been the law of this state, whether the contract was one for a definite period or for the performance of a particular service." The only exception to this rule is that of building contracts, which rest on reasons peculiar to themselves. See *Yeats v. Balentine*, 56 Mo. 530, and numerous other cases that might be cited.

In the light of the law as above announced, the errors in this trial are manifest. The court refused to instruct the jury, as was requested by defendant, that if they should find from the evidence that plaintiff and defendant in the summer of 1892 entered into an agreement whereby the former employed the latter as his attorney to defend the suits named, and "that he (plaintiff) should remain in said suits as said King's attorney to the end of such litigation, and that said Blanton agreed to take said cases and remain in them as such attorney of King to the end of such litigation; and if the jury further believe that said Blanton, after entering upon his duties as such attorney, abandoned said litigation or refused to go on and perform his duty as such attorney under his said contract at a time when such litigation was not finished; and that said abandon-

ment was without any cause proceeding from Mr. King or the act of God, then the plaintiff can not recover in this action and the finding should be for the defendant.'' But the court, on the other hand, in effect told the jury that they should disregard all testimony concerning the alleged abandonment or refusal of plaintiff to act as defendant's attorney, and that they should return a verdict for plaintiff for the value of his services performed, less the $250 paid by plaintiff. The trial court should have given an instruction about as requested by defendant's instruction number 2, the substance of which is quoted above. In the record there appears ample to justify said instruction. It is in keeping with the answer, and besides there was abundant testimony upon which to base such a defense. Plaintiff himself testified that when they were negotiating for the employment he told Mr. King that he would not go into the cases unless they were fought ''to the bitter end.'' While King, the defendant, testified as follows:

''I went in the month of August, 1892, to Mr. Blanton's office, and I said 'I would like for you to go into the case again and assist Mr. January.' 'Well,' he says, 'I will take the case for you upon *one condition*, and that is that I fight it to the *bitter end for you.*' 'But,' he says, 'if I go into the case I want it distinctly understood there will be no more compromising, no more foolishness in the business.' I said 'the bridges were burned before and behind me and I had to fight.' He says, 'under that condition I will go into the case and fight it to the bitter end for you.' I asked him what he would charge me, and he said that, as in the other cases, the fee would be reasonable. Of course he said he did not know how much work there was to be done. I said go ahead.''

The evident tendency of this testimony was to

prove the contract to have been one for services to be performed throughout and *to the conclusion of the litigation in all the courts*. The unjustifiable abandonment by an attorney of his client's cause and in the midst of the litigation is much more serious in its probable results than in cases of ordinary employment. It is the peculiar tact and ability of the particular lawyer that is contracted for, and very naturally the client must have an interest in retaining the attorney throughout the litigation so as to avail himself of the advantages derived by the counsel's thorough acquaintance with the law and the facts acquired during the progress of the litigation. Additional reasons then appear in this character of case for enforcing the rule of law declared in the beginning of this opinion.

The judgment must be reversed and cause remanded for a new trial. The other judges concur.