ALLEN, Respondent, vs. Ross and others, Appellants.

*May 1—June 4, 1929.*

164

*L. H. Bancroft* of Milwaukee, for the appellants.

For the respondent there was a brief by *Richmond, Jackman, Wilkie & Toebaas* of Madison, and oral argument by *Oscar T. Toebaas.*

STEVENS, J. 1. When two persons enter into an agreement to make, and do actually make, mutual and reciprocal wills by which each bequeaths her estate to the other, if she survives, and the survivor takes under such a will and accepts the benefit of such a mutual will and accepts the benefit of such a mutual agreement, equity will take such action as may be necessary to give effect to the mutual agreement that the property of the survivor shall go to the person designated by such agreement. *Doyle v. Fischer,* 183 Wis. 599, 605, 198 N. W. 763.

If it be necessary in order to give effect to such agreement, equity will impress the property of the survivor with a trust in favor of the person who is entitled to the property under such mutual agreement.

2. The testimony of Judge Lincoln, the attorney who drew these two wills, establishes the fact that they were made pursuant to a mutual agreement between these two women that the survivor should have and enjoy all of the property possessed by the other, and that, on the death of the survivor, all of the property of both these women should go to the plaintiff. If this testimony was admissible the finding that such agreement was made must be affirmed.

The rule of the common law and of the statute (sec. 325.22) "within its proper limits is most salutary. It is essential to the ends of justice that clients should be safe in confiding to their counsel the most sacred facts, and to receive advice and advocacy in the light thereof without peril of publicity. Disclosures made to this end should be as secret and inviolable as if the facts had remained in the knowledge of the client alone. . . . But there are necessary limits to the broad rule that all communications between him who is client and him who is attorney are thus privileged." *Koeber v. Somers,* 108 Wis. 497, 504, 84 N. W. 991. "The privilege of secrecy between attorney and client is grounded in the idea that communications made by the latter to the former are of a confidential nature and must necessarily be such in order to enable the attorney to properly serve his client. The rule does not extend further than the reason thereof." *Herman v. Schlesinger,* 114 Wis. 382, 390, 90 N. W. 460. The privilege is based on the fact that the communication is made in confidence to the attorney.

The mother and the daughter went to consult Judge Lincoln. "Each heard what the other said, so that the disclosures made were not, as between them, confidential, and there can be no reason for treating such disclosures as privileged." *Hurlburt v. Hurlburt,* 128 N. Y. 420, 424, 28 N. E. 651, 652. "The disability of an attorney to act as a witness applies only when the communications are intended to be confidential." *Wallace v. Wallace,* 216 N. Y. 28, 36, 109 N. E. 872, 873. " 'The moment confidence ceases,' said Lord ELDON, 'privilege ceases.' " 5 Wigmore, Ev. (2d ed.) § 2311. Clearly, if any litigation had arisen between these two women, Judge Lincoln would have been competent to testify to all that was said in such conference, because the communication was not confidential, and therefore not within the privilege.

The situation would not be changed if this litigation were

between the personal representatives of these two women. Evidence which would have been competent against either of them in their lifetime would be competent against her personal representatives, because such communication was not one that was confidential and privileged, when made. *Hurlburt v. Hurlburt*, 128 N. Y. 420, 28 N. E. 651, 652.

Our statute, section 4076 (now section 325.22), was taken verbatim from New York. In a case arising after Wisconsin enacted this statute, the New York court of appeals construed that statute, in a case that involved a similar contract to make mutual wills leaving the property of both testators to designated beneficiaries. It was there held that the same rule should be applied in actions between the beneficiaries under the two mutual wills that would have been applied if the action had been one between the personal representatives of said testators. *Wallace v. Wallace*, 216 N. Y. 28, 109 N. E. 872, 873. In a South Carolina case, where beneficiaries under a contract to make similar mutual wills offered proof of the directions given by the decedents to the attorney who drew these wills, the court, in holding that such communication was not privileged, said that if the one who drew the will "was the confidential attorney of either of these ladies, he occupied that relation to both, and as between them *or those claiming under them* the communications made by them to him were not privileged." *Wilson v. Gordon*, 73 S. C. 155, 53 S. E. 79, 80. See, also, *Mueller v. Bacheler*, 131 Iowa, 650, 109 N. W. 186, 187.

The rule declared by these cases is not only supported by authority, but is the one that is supported by the sounder logic and better reasoning. The purpose of the privilege is to protect the client, not to thwart the purpose of the client and protect those who the trial court has found have taken advantage of their confidential relationship with one who is aged and infirm to secure all her property without giving adequate compensation therefor.

Under this agreement to make mutual wills giving all property that remained after the death of the survivor to the plaintiff, the law, under the rule of *Tweeddale v. Tweeddale*, 116 Wis. 517, 526, 93 N. W. 440, operated to put the plaintiff in privity, so that in legal effect he stood in the shoes of the daughter, very much as an executor stands in the shoes of a testator. For the same reason that applies in the case of the personal representative, the communications made to Judge Lincoln, which are here in question, were not privileged and might be offered by the plaintiff.

3. The proof tending to show that the mother and daughter had expressed some desire to change their wills is not material. The controlling facts are that the wills and the agreement under which they were made were not changed and that the mother accepted the property of her daughter while this mutual agreement was in force and full effect.

4. The court finds nothing to criticise in the conduct of Mr. Brewer. He had never personally acted as attorney for either the mother or the daughter. While his name appeared as one of the attorneys on the pleadings in this case drawn by those who represented the plaintiff in this court, he withdrew from the case before the trial began, as soon as it was apparent that he might be a witness in the trial of this action.

5. The plaintiff, both on direct and on cross-examination, testified to some transactions with both the mother and the daughter with reference to his management of their property. This testimony had but little, if any, bearing upon the question of whether the mutual agreement here in question was made. That agreement is established so clearly and so satisfactorily by the testimony of Judge Lincoln that this incompetent testimony given by the plaintiff could not have prejudiced the substantial rights of the defendants.

*By the Court.*—Judgment affirmed.

ESCHWEILER, J., dissents.