In the Matter of the Estate of Hugh W. Thomasson; S. C. Rogers v. The Boatmen's National Bank, Appellant.—144 S. W. (2d) 79.

Division One, October 31, 1940.*

*NOTE: Opinion filed at May Term, 1940, May 7, 1940; motion for rehearing filed; motion overruled June 28, 1940; motion to transfer to Court en Banc filed; motion overruled at September Term, 1940, October 31, 1940.

912

*Charles Claflin Allen, Jr., James V. Frank* and *Franklin E. Reagan* for appellant.

*Amandus Brackman* for respondent.

HAYS, P. J.—The respondent filed in the Probate Court of the City of St. Louis a demand against the estate of Hugh W. Thomasson, deceased. The case was certified to the circuit court under Section 2053, R. S. Mo. 1929, where the validity of the claim was contested by the present appellant, the executor of said estate. A jury trial in the circuit court resulted in a verdict and judgment for the claimant in the amount of $35,000, from which an appeal was allowed to this court.

Respondent, a duly licensed attorney at law, has practiced his profession in St. Louis for many years. The present claim is for legal services alleged to have been rendered by him for Thomasson. Mr. Thomasson was at the time of his death in 1933 some 76 years of age. He was a man of feeble intellect, having suffered for sometime from senile dementia. At the time of his death he was possessed of an estate whose gross value was estimated at about $750,000. Repondent first represented him in 1923 by filing a damage suit against the City of St. Louis arising from an abortive attempt of the city to condemn certain Thomasson properties. Owing, so respondent says, to Thomasson's mental condition, this suit was never brought to trial, but at the time of the hearing of the present case was still pending on the circuit court docket. In respondent's demand only an insignificant portion of the total fee asked is allocated to this litigation. Practically all of the fee asked is in connection with litigation against one Grace Allen, also sometimes known as Caroline Mahood and as Grace Thomasson and by divers other names. (For convenience we shall refer to her as Grace Allen.) The Thomasson-Allen matters, in so far as respondent was connected therewith, started in the year 1930 and his connection with these matters terminated August 15, 1931.

Respondent's demand originally was for an attorney's fee of $75,250 and expense money of $7,337.58, as against which he admitted a credit for payments received of $9,171. He afterwards voluntarily reduced this claim by $10,000, making the balance prayed for $63,416.58.

During the trial below the appellant moved for a directed verdict at the close of the claimant's case and again at the close of all of the evidence, and it here assigns as error the trial court's refusal of these motions. Before considering the record pertaining to this assignment, we will notice a contention of respondent in connection therewith. At the close of all of the evidence, after the trial court had refused the directed verdict for the defendant, the claimant asked and the court at his request gave instructions submitting the case on claimant's theory. To the giving of these instructions appellant failed to except. Appellant then asked and was given instructions submitting its theory of defense. Did it thereby, as contended by respondent, waive the right to challenge the sufficiency of the evidence to make a submissible case? Our latest decisions have held that it did not, and this is now the established general rule of our court. [Lew-

ellen v. Haynie, 287 S. W. 634; Elkin v. St. Louis Public Service Co., 335 Mo. 951, 74 S. W. (2d) 600; Ambruster v. Levitt Realty Co., 341 Mo. 364, 107 S. W. (2d) 74; Philibert v. Benjamin Ansehl Co., 342 Mo. 1239, 119 S. W. (2d) 797.]

The cases of Davison v. Hines, 246 S. W. 295 and Merrielees v. Wabash R. Co., 163 Mo. 470, 63 S. W. 718, cited by respondent, and also the case of Torrance v. Pryor, 210 S. W. 430, contain certain broad statements which appear to support the respondent's position in this regard. However, in so far as they take the ground that the act of a defendant in requesting instructions submitting his theory of defense necessarily and in all cases waives the question of the sufficiency of a plaintiff's evidence as raised by requested peremptory instructions, these cases were overruled by our later decisions above cited. Hence we rule the point against the respondent.

█ We fully recognize the rule to which attention was called in oral argument and in respondent's brief that in passing upon a demurrer to the evidence ordinarily we must accept as true all of the facts shown in the record favorable to the plaintiff who was successful below and must disregard evidence favorable to the defendant whenever it is in conflict with that favorable to plaintiff. We must also draw from the evidence all reasonable inferences in support of the claimant's theory. [Rexford v. Philippi, 337 Mo. 389, 84 S. W. (2d) 628; Becker v. Aschen, 131 S. W. (2d) 533; State ex rel. Highway Commission v. Hoffmann, 132 S. W. (2d) 27.]

But, on the other hand, where the claimant has expressly and deliberately admitted certain facts in his pleadings or in his testimony, we are, of course, justified in accepting such facts as true. If such admissions should definitely establish a complete defense to the claim, the duty of the trial court to direct a verdict would be plain.

█ Respondent correctly states that a demand filed in a probate court is not to be judged by the strict rules of pleading applied to a petition in the circuit court. Such a demand is sufficient if it gives reasonable notice to the adverse party of the nature and extent of the claim made, and if it be specific enough so that a ruling thereon will become res judicata of the matters involved. [Rassieur v. Zimmer, 249 Mo. 175, 155 S. W. 24; Liebaart v. Hoehle's Estate, 111 S. W. (2d) 925.] Yet, regardless of whether or not the demand considered as a pleading be sufficient, the facts stated therein which are unfavorable to the claimant stand as a solemn judicial admission, the truth of which, in the absence of some showing of innocent mistake on the part of the pleader, ought to be taken as established. Particularly is this true when the claimant himself is a lawyer and would, therefore, have every opportunity to know what he stated in his pleading and the legal effect of the allegations so made. So we look to the allegations of the claim to see whether or not it contains admissions against the interest of the claimant which must be considered along with the testimony

in the case as bearing upon the question of whether or not he was entitled to go to the jury.

The evidence disclosed that in 1930 said Grace Allen, a notorious adventuress, met Thomasson at the Fairmount Hotel where he then resided and conceived a plan to possess herself of a large part of his estate. She induced him to take a trip with her to Waterloo, Illinois, where through fraudulent representations she induced him to sign an application for a marriage license. It seems clear that Thomasson did not know the nature of the document he signed. A ceremony was then performed by a justice of the peace. Subsequently Grace Allen, evidently dubious as to the validity of this marriage, had a second ceremony performed. Thomasson was totally unaware of what was going on. When he returned to St. Louis she informed him that she was his wife and demanded the payment of money.

Soon after these demands were made and within a few days after the first purported marriage, Thomasson consulted respondent who, at his request, inserted advertisements in the newspapers to the effect that Thomasson would not be responsible for debts created by Grace Allen. Respondent then hired detectives to investigate this woman's antecedents and the facts of the purported marriage. He warned his client to leave the city to avoid being kidnapped by her and her confederates, but his advice was disregarded. Respondent's fears were justified, as will appear. Grace Allen and her associates forcefully seized Thomasson and took him to Chicago where he was made to sign a purported separation agreement, binding himself to pay her considerable amounts of money.

When he returned to St. Louis an annullment suit was filed and steps were taken to protect his property. Again Grace Allen kidnapped him and she seems to have had him under her control from that time until the dissolution of the relations between him and the respondent hereinafter described. In an effort to prevent her from possessing herself of Thomasson's property, a number of legal proceedings were filed either directly by respondent or by others at his instigation. To list them all here is needless. Included in the list were a suit to appoint a receiver of the Thomasson properties and to set aside certain conveyances, an inquiry into Thomasson's sanity, a criminal prosecution of Grace Allen for kidnapping and an involuntary bankruptcy proceeding against Thomasson.

While Thomasson was being held a virtual prisoner by Grace Allen, he wrote two letters to respondent demanding that the cases which had been filed in his name be dismissed and, impliedly at least, discharging the respondent as his attorney. Respondent paid no attention to these letters and when Grace Allen caused a joint order of dismissal, signed by herself and Thomasson, to be filed in court, he successfully resisted such application. Grace Allen then applied to this court for a writ of prohibition restraining further proceedings in the actions which

she had tried to have dismissed. Respondent filed suggestions in opposition, and we refused to grant our preliminary writ.

Sometime before August 13, 1931, one Wilfred Jones, then a practicing lawyer in St. Louis county, and an associate of his named Denny, entered the picture. Jones purported to represent Grace Allen at first and later claimed to represent Mr. Thomasson, while Denny claimed to be an attorney for the latter. They began to negotiate with respondent for a settlement. The first tentative proposition seems to have been that Thomasson was to convey all of his property to trustees. The income from the trust was to be divided equally between himself and Grace Allen during his lifetime, with the entire corpus to go to her in remainder after his death. Respondent was to be paid $65,000 as an attorney's fee. Jones and Denny objected to the amount of this fee, and finally respondent agreed to take $44,000. He insisted that he be allowed to see Thomasson personally. On the 13th of August, Denny took respondent in an automobile to an appointed rendezvous alongside a public highway in Illinois near Springfield. Here they found awaiting them another automobile. Jones' son was in the driver's seat. Thomasson and Grace Allen were seated together in the rear seat. Thomasson said to respondent: "I discharge you as my attorney; I have executed notes to pay you." This was the entire conversation. Respondent did not get to talk to the old gentleman privately. In fact he seems to have made no effort to do so. He turned around and came back to St. Louis. Immediately the notes for $44,000, as provided in the contemplated settlement, were placed in escrow and, when this was done, respondent withdrew from all of the Thomasson litigation.

The record clearly shows that respondent performed a considerable amount of services for Thomasson and that he expended certain moneys in connection therewith. The amount of expenses claimed by respondent was $7337.58. The respondent admits in his claim that he received in cash from Thomasson $9171, which in addition to paying the expenses allowed him $1833.42 on his fee. The determination of the reasonable value of respondent's services, under the evidence, would ordinarily be for the jury. Appellant, however, contends that respondent voluntarily and without fault on the part of his client abandoned his representation of Thomasson, while the litigation to which the latter was a party was still pending.

Where a lawyer is, without fault on his part, discharged by a client during the pendency of litigation for which he has been retained, he is entitled to be paid a reasonable fee for the work done prior to discharge; and this is true even though his original contract of employment was on a contingent basis. [Mills v. Metropolitan Street Railway Co., 282 Mo. 118, 221 S. W. 1.] On the other hand, if the lawyer unjustifiably abandons his client's case before his task is accomplished, he is not entitled to any compensation whatever. [Mills v.

Metropolitan Street Railway Co., supra; Blanton v. King, 73 Mo. App. 148; Houck v. Bridwell, 28 Mo. App. 644; Annotations: 52 L. R. A. (N. S.) 381, 45 A. L. R. 1137.] The very nature of the lawyer's profession necessitates the utmost good faith toward his client and the highest loyalty and devotion to his client's interests.

The question before us is reduced to this: Did respondent withdraw from the representation of Thomasson voluntarily and without legal justification, or was he discharged therefrom by his client?

Superficially it would seem that Thomasson discharged respondent; but was this actually the fact? We think it was not. Respondent in his pleading and in his testimony admits that Thomasson was a man of unsound mind; that, as we have said, he was held a virtual prisoner by Grace Allen, the very party against whom the pending litigation had been filed; that she had continuously over a period of months exercised undue influence over Thomasson and had successfully employed duress to force him to execute divers deeds and other legal documents. Thomasson was not permitted to talk privately to respondent. The very conversation in which it is claimed Thomasson discharged him took place at a secluded country roadside rendezvous, when Thomasson was seated in an automobile belonging to Jones and with Grace Allen at his side. The very conversation itself consisted of a single short and cryptic sentence which bears the earmarks of her dictation. In fact this formal discharge was but the combination of negotiations conducted by respondent not with Thomasson himself but with Jones, who, to respondent's knowledge, occupied the equivocal position of attempting to represent both sides in the litigation, and with Denny, Jones' office associate. It was part and parcel of an agreement by virtue of which Grace Allen partially succeeded in her nefarious design to become possessed of the Thomasson property. For as a result of that agreement she was to obtain one-half of the life estate in the property and the entire remainder. At the time of the attempted dismissal of the circuit court proceedings and of this woman's attempt to secure our writ of prohibition, respondent recognized that Thomasson was incapable of voluntarily discharging him and refused to act upon the letters of Thomasson in which such dismissal was demanded. If the position he then took was justified, it was justified by the fact that Thomasson was of unsound mind and was acting under duress. These conditions had not changed on the 13th of August.

Section 44 of our Rule 35 governs the conditions under which an attorney may properly withdraw from the representation of a client. True, this rule was not in force as a rule of this court in 1931, but it is merely declaratory of ethical principles which have always been binding upon the member of the bar. It is there pointed out that it is not always sufficient to justify an abandonment of litigation by

an attorney that the client consent thereto or even desire such abandonment.

We conclude that the determination of respondent's employment was not brought about by the voluntary act of his client nor caused by such misconduct of the client as would make respondent's withdrawal necessary, but that it constituted a voluntary abandonment by respondent of the task he had undertaken. Under such circumstances he is not entitled to recover any fee other than that which he has already been paid. These considerations are based upon facts directly admitted by respondent in his pleading and in his testimony. The trial court therefore erred in refusing to direct a verdict for the defendant.

Our ruling upon the sufficiency of the evidence makes it unnecessary to pass upon the question raised as to the correctness of the instructions given by the trial court at the instance of respondent. It is certainly true, as urged by respondent, that such question is not properly before us since the record does not disclose any exceptions saved by the appellant to the giving of such instructions. [Howell v. Jackson County, 262 Mo. 403, 171 S. W. 342; In re McMenamy's Guardianship, 307 Mo. 98, 270 S. W. 662.]

Nor is it necessary for us to rule upon the sufficiency of the demand considered as a pleading; and we have considered such demand solely as containing admission of fact against the pleader.

It follows that the judgment below must be reversed. It is so ordered. All concur.