PHELPS STEEL, INC. *vs.* ANDREW VON DEAK & others.[1]

Hampden.    March 9, 1987. — August 6, 1987.

Present: GREANEY, C.J., CUTTER, & KASS, JJ.

*Attorney at Law,* Compensation. *Lien. Practice, Civil,* Master.

In an action to enforce an attorney's lien, no error appeared in the findings
   of a master, to whom the fee and lien dispute was referred, that the law
   firm had not waived the lien by withdrawing from representation where
   the breakdown of the lawyer-client relationship served as good cause
   for withdrawal and where the firm had rendered substantially all the
   services required to obtain a favorable result for the client at the trial
   level. [593-594]
No reason appeared to disturb the findings of a master on the amount of
   an attorney's fee asserted through a lien. [594-595]

CIVIL ACTION commenced in the Superior Court Department
on June 4, 1979.

After a motion to determine and enforce an attorney's lien
was referred to a master by *Raymond R. Cross,* J., a motion
to adopt the master's report was heard by *Charles R. Alberti,* J.

The case was submitted on briefs.

*Prescott C. Sook* of New York for the plaintiff.

*H. Gregory Williams & Ronald S. Smith* for Cain, Hibbard,
Myers & Cook.

KASS, J. What we have here is the assertion of an attorney's
lien under G. L. c. 221, § 50, following rupture of the attorney-
client relationship. We affirm a judgment awarding a lien of
$108,000 in favor of Cain, Hibbard, Myers & Cook (hereafter
"CHMC"), a professional corporation.[2]

---

[1] Von Deak and eight other defendants were, apparently, joint venturers
in the construction and operation of a shopping mall in Holyoke. The joint
venture was conducted under the name Pyramid Company of Holyoke.

[2] The lien is against the fruit of the judgment recovered through the efforts
of counsel asserting the lien. That is a "charging lien," distinguishable from

CHMC had acted as counsel for Phelps Steel, Inc. (Phelps), a fabricator and erector of structural steel, in a construction contract dispute with Pyramid Company of Holyoke (Pyramid) (see note 1). That case had gone well for Phelps, resulting in a judgment in its favor of $286,651. Between the time of a master's report, which was, by any measure, a triumph for Phelps, and the report's adoption, the relationship between Phelps and CHMC soured. Phelps found fault, among other matters, with CHMC's decision not to file objections to the master's report (that report had resolved the major issues in favor of Phelps), the manner in which CHMC was keeping Phelps informed, the amount of lawyers' time spent, and the decision to order daily transcript. One week prior to a scheduled hearing before the master to consider Pyramid's objections to the master's report, CHMC protested what it saw as "attacks on [its] personal integrity and professional competence." It asked for a written vote of confidence from Phelps dispelling CHMC's perception. Failing that, CHMC said, it would report to the master that it was not authorized to proceed on Phelps' behalf. Far from giving CHMC comfort, Phelps responded with complaints about "blackmail" and "abandonment." Phelps also informed CHMC that it had engaged a replacement.

1. *CHMC's Entitlement to an Attorney's Lien.* Relying on *White* v. *Harlow,* 5 Gray 463, 466 (1855), Phelps argues that the withdrawal of a lawyer from the cause forfeits the attorney's lien. Even if that were a correct statement of the law, it would leave open the question whether CHMC left the case upon its initiative or was pushed. The same master who had heard the underlying construction contract dispute held hearings (on order of the court) on the fee and attorney's lien controversies. In substance, the master found that CHMC had been placed in a position where it was bound to withdraw, i.e., it was pushed.

The applicable principle regarding waiver of an attorney's lien by withdrawal is not nearly so broad as Phelps states it.

a "retaining lien," which lies against the client's papers and personal property in the hands of the lawyer. See generally, McCann, The Attorney's Lien in Massachusetts, 69 Mass.L.Rev. 68 (No. 2, 1984).

*White* v. *Harlow,* 5 Gray at 466, assumes that the withdrawal of the lawyer in that case was "wholly voluntary." Whether withdrawal works a waiver of the attorney's lien depends on whether the attorney had good cause to withdraw. Thus if, for example, withdrawal occurs because of a breakdown in the lawyer-client relationship, illness of the lawyer, or development of an unforeseen, and reasonably not foreseeable, conflict of interest the attorney's lien remains intact. *Powers* v. *Manning,* 154 Mass. 370, 375-377 (1891). *Pearlmutter* v. *Alexander,* 97 Cal. App. 3d Supp. 16, 19-20 (1979). *Ambrose* v. *Detroit Edison Co.,* 65 Mich. App. 484, 488 (1975). See also *Schwartz* v. *Jones,* 58 Misc. 2d 998, 999 (N.Y. Sup. Ct. 1969); *Midvale Motors, Inc.* v. *Saunders,* 21 Utah 2d 181, 182-183 (1968). Breakdown of the lawyer-client relationship serves as good cause for withdrawal, without waiver of the attorney's lien. See *M.E.* v. *S.G.,* 124 Misc.2d 851, 851-853 (N.Y. Fam. Ct. 1984). Cf. *National Sales & Serv. Co.* v. *Superior Court,* 136 Ariz. 544, 545-547 (1983). The lawyer-client relationship is founded on trust and confidentiality. When those foundations deteriorate, it is not only impractical to persist in the relationship, it diminishes the integrity of the bar to do so. *Salem Realty Co.* v. *Matera,* 10 Mass. App. Ct. 571, 575 (1980), *S.C.,* 384 Mass. 803 (1981). See also *Ambrose* v. *Detroit Edison Co.,* 65 Mich. App. at 488-489; *In re Dunn,* 205 N.Y. 398, 402 (1912).

It is also a factor in favor of CHMC that it had rendered substantially all the services required to obtain a favorable result for Phelps at the trial level. Thus, even if CHMC's withdrawal from the case had not been provoked by Phelps, there was, assuming some good cause for withdrawal, a solid basis for the statutory lien, which attaches "[f]rom the authorized commencement of an action." G. L. c. 221, § 50. See *In re Hoy's Claim,* 93 F. Supp. 265, 266 (D. Mass. 1950). Cf. *Newton Housing Authy.* v. *Cumberland Constr. Co.,* 5 Mass. App. Ct. 1, 8-10 (1977). See also *Salem Realty Co.* v. *Matera,* 384 Mass. at 804.

2. *Reasonableness of the fee.* Initially, Phelps had engaged CHMC on a time-charge basis. After commencement of the

litigation, Phelps found the cost of maintaining the action burdensome and asked to go on a contingent fee basis. Client and lawyer entered into a written contingent fee agreement on October 8, 1983. See S.J.C. Rule 3:05, as appearing in 382 Mass. 762 (1981). The master regarded the contingent fee as abrogated by the departure of CHMC from the case, compare *Salem Realty Co.* v. *Matera,* 384 Mass. at 804, and analyzed the fee CHMC was entitled to on a quantum meruit basis. CHMC has interposed no objection to the quantum meruit approach.[3]

We have reviewed the master's report and are more than satisfied that he considered the relevant factors, which included: the time spent; the skill and experience of counsel; the complexity of the case; the calibre of the services; and the success achieved. See *Mulhern* v. *Roach,* 398 Mass. 18, 24-25 (1986); *Salem Realty Co.* v. *Matera,* 10 Mass. App. Ct. at 576-577. See also the citation to recent authority in *Bird* v. *Bird, ante* 362, 370 (1987). The testimony of Mr. Rogers of CHMC concerning the time expended by him and Mr. Myers of that firm in preparing the case and trying it for twenty-nine days was perfectly good evidence and, in any event, not made the basis of any objection. The findings of the master are not clearly erroneous, mutually inconsistent, contradictory, unwarranted by the evidence or vitiated in view of the controlling law. *Wormstead* v. *Town Manager of Saugus,* 366 Mass. 659, 660 (1975). *Covich* v. *Chambers,* 8 Mass. App. Ct. 740, 743 (1979).

*Judgment affirmed*

---

[3] The point has not been raised whether, when a lawyer is employed under a contingent fee agreement, the limit of the fees which the lawyer may earn from the matter is that which would have resulted by application of the contingent fee agreement. We intimate no views on the question.