INTERNATIONAL MATERIALS
CORPORATION, Plaintiff–
Appellant,

v.

SUN CORPORATION, INC., Defendant,

Richard Wolff, et al., Respondents.

No. 73829.

Supreme Court of Missouri,
En Banc.

Jan. 28, 1992.

Timothy E. Gammon, William A.R. Dalton, Springfield, for plaintiff-appellant.

Richard Wolff, St. Louis, Edward E. Murphy, Jr., Clayton, for respondents.

COVINGTON, Judge.

The trial judge ordered appellant, International Materials Corporation (IMC), to pay attorneys' fees to the respondents, Richard Wolff, Gus Pulos, and Edward Murphy, Jr., (St. Louis attorneys) all of whom once represented IMC and a related company, M & D Enterprises, Inc., (M & D). The Missouri Court of Appeals, Southern District, reversed the decision of the trial court, finding that because the St. Louis attorneys, being without sufficient resources to handle the case, were required to withdraw from representation of their

client by the disciplinary rules that then regulated lawyer conduct, *Rule 4*, (repealed January, 1986), *DR 6–101(A)(1); DR 2–110(B)(2)*, the attorneys were not entitled to recovery in quantum meruit. This Court granted transfer. The judgment is reversed and remanded.

Multifaceted courses of litigation give rise to the issues presented. The essential facts are not in dispute. The claims for attorneys' fees relate to litigation that remained pending for over eleven years. The litigation involved three cases, one in federal court and two in state courts. The St. Louis attorneys rendered services to IMC and an interrelated company, M & D. IMC and M & D are indistinguishable for purposes of the issues involved in this appeal. The companies owned patents for fireproofing materials. M & D entered into an agreement with Carboline Company in which M & D agreed to manufacture certain fireproofing products and Carboline agreed to market those products. Carboline eventually undertook to market its own fireproofing product, the ingredients of which included components of the formula owned by M & D and IMC.

Harvey Davis, president of both IMC and M & D, sought representation to recover damages from Carboline (which later merged with Sun Company, Inc.) for Carboline's unauthorized use of the formula. In 1978 Davis contacted Gus Pulos, an attorney in St. Louis. Mr. Pulos, not experienced in business litigation, contacted Richard Wolff, who was experienced in business litigation, and inquired whether Wolff would consider working with Pulos. Mr. Pulos and Mr. Wolff met with Mr. Davis and, following a discussion of the complexities of the case, the attorneys advised Davis that they believed the companies had an actionable case against Carboline.

M & D entered into an agreement with the law firm of Doskocil & Pulos, Inc., (Mr. Pulos' firm) and Mr. Wolff to represent M & D in its claim against Carboline. Wolff served as lead attorney. The attorneys were to be compensated for their services on the basis of a contingent fee that was not to exceed 40% of the recovery. M & D paid an initial retainer of $5000, to be retained by the attorneys regardless of the outcome of the litigation. In the event of recovery, the $5000 was to be credited against the attorneys' contingent fee percentage of the total recovery.

On May 19, 1978, the day after Davis met with the St. Louis attorneys, Carboline filed an action in the Circuit Court of St. Louis County (the St. Louis case). Carboline sought to enjoin M & D from offering for sale any of its fireproofing materials or technology. Pulos and Wolff filed a counterclaim in the case on July 26, 1978. The counterclaim sought to recover damages from Carboline for unauthorized use of the formula. The St. Louis attorneys spent time on discovery. Some rulings on discovery matters were delayed in the circuit court.

The Pulos firm and Wolff were joined by additional counsel during the course of litigation. In 1979 or 1980 Wolff communicated with Edward Murphy, Jr., an experienced litigator, also of St. Louis, about the possibility of Murphy's working on the case. Mr. Murphy agreed, subject to the approval of Davis. Wolff contacted Davis, assured him that there would be no additional legal fees required, and obtained his approval for Murphy and Gary Seltzer, a lawyer associated with Murphy, to join in the representation of M & D. Wolff remained the lead attorney.

In May of 1982, the St. Louis attorneys filed an action in the United States District Court for the Eastern District of Missouri (the federal case) on behalf of M & D and IMC against Sun, hoping for more rapid disposition of the case. The federal case alleged claims identical to those presented in the state court counterclaim. Opposing counsel moved to dismiss on the ground of absence of a necessary party, but the court overruled the motion. The court reversed itself in January of 1985, and dismissed the case on Sun's motion for summary judgment because M & D failed to join Carboline, an indispensable party. Carboline's joinder would have defeated diversity jurisdiction.

Mr. Davis expressed his desire to appeal the decision of the federal district court. Mr. Wolff recommended against an appeal, believing that the appeal would be without merit and a violation of Fed.R.Civ.Pro. 11. Mr. Davis then insisted on appeal, and again Wolff declined.

The client companies were dissatisfied. Mr. Davis commenced to search for other counsel to take over the federal litigation. During January and February of 1985 Mr. Wolff stated his willingness to continue to represent the client in the state court proceeding in St. Louis County, to commence new litigation in the Circuit Court of Greene County, or to accept co-counsel status with new attorneys. The client did not agree to any of the alternatives presented. The St. Louis attorneys offered a series of proposals for restructuring their fee. By letter of March 11, 1985, the St. Louis attorneys offered to withdraw completely from the case to permit new attorneys to proceed alone and offered to accept payment of attorneys' fees in the amount of $30,000.00. The client did not accept any of the offers.

Ultimately Davis approached the Springfield firm of Harrison, Tucker and Geisler, later becoming Harrison, Tucker and Hyde, concerning representation of the companies in a lawsuit against Sun to be filed in the Circuit Court of Greene County. The Springfield attorneys stated that they would represent the companies but only if acting as sole counsel. Davis then discussed with the Springfield attorneys the possibility of taking over the entire case. Having received no response to their offer of March 11, 1985, the St. Louis attorneys wrote to Davis on May 16, 1985, asking to be informed of their status, requesting payment, and stating that it was in the best interest of the client for them, the St. Louis attorneys, to withdraw.

Davis entered into a written contingent fee contract with the Springfield attorneys on June 24, 1985. A term of the contract acknowledged that IMC and M & D were engaged in a controversy with the St. Louis attorneys over the amount of fees owed to those attorneys and provided that the client would indemnify the Springfield attorneys from any claim of the St. Louis attorneys. The contract further provided that the Springfield attorneys would be paid their fee with nothing subtracted for any lien, fee or judgment that the St. Louis attorneys might exercise, allege or collect.

Davis agreed to pay the Springfield attorneys a contingent fee of forty-five percent in any case where M & D was the claimant and fifty percent in any case where IMC was a claimant.

The Springfield attorneys instituted litigation on behalf of IMC in Greene County in March of 1986 (the Springfield case). They also filed an amended counterclaim in the St. Louis case. The St. Louis attorneys filed motions for leave to withdraw from the state and federal court proceedings, July 24, 1985, and July 31, 1985, respectively, asserting their rights to a lien on any settlement proceeds.

No settlement offers had been forthcoming from Carboline or Sun in either the federal case or the St. Louis case during the time the St. Louis attorneys represented the Davis companies. Following the withdrawal of the St. Louis attorneys, the entry of appearance by the Springfield attorneys, and extensive discovery, the St. Louis case was set for trial in July 1989, then continued until October 1989. Before trial, the parties settled the case in favor of IMC in the amount of $2,660,000. Pursuant to their agreement with the client, the Springfield attorneys received a fee in excess of $1,200,000.

When Sun settled with Davis, Davis executed an escrow agreement with the St. Louis attorneys that acknowledged the dispute with the St. Louis attorneys. The parties agreed to set aside an amount from the settlement proceeds to pay any fees that might later be found owing to the St. Louis attorneys.

After hearing evidence on the matter of attorney's fees the trial court found that the St. Louis attorneys were entitled to be reimbursed for all of their services at their customary hourly rate. The trial court

made findings and conclusions, the most significant of which are the following:

\* \* \* \* \* \*

4. Movants first prosecuted the claim in the St. Louis County Circuit Court. They were met with vigorous opposition in what was at that time an inefficient system of justice and after almost four years had achieved no success.

5. In May of 1982 movants filed the claim in federal court because they thought it would be faster and was a better forum for the prosecution of this case, but after two and a half years of vigorous trial preparation lost the claim on a summary judgment on a jurisdictional issue.

6. Movants refused to file an appeal or a motion for rehearing, although specifically requested to do so by respondent. The Court finds that they were justified in their decision and that the respondent, although justifiably disappointed, was not prejudiced by this decision not to file after trial motions.

7. The state case in St. Louis Circuit Court had been allowed to lie fallow during the pendency of the federal case. It had been placed on the court's dismissal docket for inactivity. Movant Wolfe [sic] had it removed from this docket, but with a July trial setting. The case was not and could not be prepared for adequate trial by that date or even shortly thereafter.

8. By the time of February of 1985 respondent was understandably disappointed, unhappy and unsatisfied with the performance of movants. Movants had expended almost twelve hundred hours of labor by this time and there appeared to be little likelihood of ever being compensated for their efforts.

9. It was or should have been apparent at this time that the case was too difficult for movants because they did not have the resources of time and staff available to successfully prosecute this claim.

10. By June of 1985 movants voluntarily, and with the consent of respondent, withdrew as counsel in this case. The Court finds that movants did not abandon respondents.

11. When the contingent contract of employment was cancelled movants became entitled to be paid the reasonable value of their services when and if respondent's claim was brought to successful conclusion.

12. Movants offered to settle this contingent claim for $30,000.00. Respondent did not accept this offer.

13. Respondent retained the Springfield firm of Harrison, Tucker and Geisler to prosecute this claim. After four and a half years of able, consistent and vigorous prosecution they successfully settled this claim for $2,660,000.00.

14. In determining the reasonable value of movants' services the Court finds that the claim was not novel, but was complex and extremely difficult, with an able defense attorney and opponent with tremendous resources as compared with respondent. That the St. Louis County justice system was sometimes inefficient. That although movants were unsuccessful in prosecuting the claim, their effort did contribute to the final victory.

The Court concludes that the movants are entitled to be reimbursed for their services in this case at their hourly rate. Thus, movant Wolfe [sic] is to receive $38,760.00, calculated at $75.00 an hour for 516.8 hours, less $3,334.00 he's already received; that movant Pulos is entitled $16,144.71, calculated at $75.00 an hour for 214.9 hours and $27.21 expenses, less $1,666.00 he's already received; that movant Murphy is entitled, in accordance with Exhibit 21, for his work of $22,730.50.

The cumulative amount that the trial court found to be a reasonable fee for the services of the St. Louis attorneys after crediting the retainer was $72,635.21.

Analysis of the dispositive issue of an appropriate fee for attorneys who withdraw from representation of a client as a consequence of inability to continue to handle the client's case is guided by considerations of professionalism as they relate to an attorney's responsibilities to his or her

client. The term "profession" refers to persons following a common calling in the spirit of public service. The lawyer's calling is to give order to society. *See*, R. Pound, *The Lawyer From Antiquity To Modern Times*, (1953). While economic necessity demands that professionals earn a livelihood, the gaining of a livelihood has always been incidental to the practice of a profession. Id. at 353–62.

■ This Court in *Plaza Shoe Store, Inc., v. Hermel, Inc.*, 636 S.W.2d 53 (Mo. banc 1982), most recently spoke on the subject of a lawyer's compensation upon termination of the relationship with the client:

> Initially we note that the relation between a lawyer and his client is a delicate and exacting one, highly personal, 7 Am Jur.2d Attorneys at Law, § 92, at 105 (1963). The cause of action or claim which is the subject of the contract between lawyer and client is the property of the client and not the attorney. *Mills v. Metropolitan St. Ry. Co.*, 282 Mo. 118, 221 S.W. 1, 4 (1920). If plaintiff were dissatisfied with his attorneys he had the legal right to discharge them and employ other counsel, *Allen v. Fewel*, 337 Mo. 955, 87 S.W.2d 142, 145 (1935); *In re Downs*, 363 S.W.2d 679, 686 (Mo. banc 1963); *McLaughlin v. McLaughlin*, 427 S.W.2d 767, 768 (Mo.App.1968), subject to the attorney's right under certain conditions to be paid a fee, *In re Downs*, 363 S.W.2d at 686; *In re Thomasson's Estate*, 346 Mo. 911, 144 S.W.2d 79, 83 (1940).

*Id.* at 57 (quoting *Craig v. Jo B. Gardner, Inc.*, 586 S.W.2d 316, 320 (Mo. banc 1979)). A lawyer's right to compensation is always limited to the extent necessary to protect the client's freedom to change counsel. *Plaza Shoe*, 636 S.W.2d at 57; *see also*, Restatement of The Law Governing Lawyers, Tentative Draft No. 4, § 52 cmt. c (April 10, 1991). These rules are necessary so that clients may obtain representation by lawyers they trust.

■ The question of compensation for the lawyer when the client-lawyer relationship ends before the lawyer has completed the services for the client turns upon a determination of whether there has been "just cause" for the lawyer's withdrawal. The general rule is that a lawyer who abandons or withdraws from a case, without justifiable cause, before termination of a case and before the lawyer has fully performed the services required, loses all right to compensation for services rendered. *White v. Wright*, 16 Mo.App. 551 (1885); *Blanton v. King*, 73 Mo.App. 148, 150 (1898); *Young v. Lanznar*, 133 Mo.App. 130, 112 S.W. 17, 19 (1908). Missouri authority is in accord with the general rule. The cases turn upon the understanding that the lawyer-client relationship is founded on trust and confidentiality. As one court has noted, "[w]hen those foundations deteriorate, it is not only impractical to persist in the relationship, it diminishes the integrity of the bar to do so." *Phelps Steel, Inc., v. Von Deak*, 24 Mass.App.Ct. 592, 511 N.E.2d 42, 44 (1987).

Courts have found just cause when a client threatens to commit perjury, *State v. Henderson*, 205 Kan. 231, 468 P.2d 136, 142 (1970); when a client accuses the attorney of dishonesty, *Mutter v. Burgess*, 87 Colo. 580, 290 P. 269, 270 (1930); when the client reports the attorney to a bar disciplinary board, *Reed Yates Farms, Inc., v. Yates*, 172 Ill.App.3d 519, 122 Ill.Dec. 576, 526 N.E.2d 1115, 1121 (4 Dist.1988). Other acts of clients leading to a finding of just cause include refusal to pay fees that are rightly owed to the attorney, *Young v. Lanznar*, 133 Mo.App. at 138, 112 S.W. at 19; refusal to communicate or a total breakdown in communication between the attorney and client caused by the client, *Ambrose v. Detroit Edison Co.*, 65 Mich. App. 484, 237 N.W.2d 520, 522 (1975); *see e.g., Dempsey v. Dorrance*, 151 Mo.App. 429, 431, 132 S.W. 33, 34 (1910), or employment of other counsel by the client with whom the first attorney cannot cordially cooperate. *Suffolk Roadways, Inc. v. Minuse*, 56 Misc.2d 6, 287 N.Y.S.2d 965, 969 (1968). In each of these cases the conduct that caused the lawyer to withdraw was the client's conduct, and it struck at the heart of the lawyer-client relationship of trust and confidentiality.

The question of whether the attorney or client caused the breakdown is not, however, always determinative. Mandatory withdrawal for ethical considerations is one factor a court may consider in determining whether or not there is justifiable cause so as to permit a recovery of compensation. *See Estate of Falco,* 188 Cal.App.3d 1004, 233 Cal.Rptr. 807 (2 Dist.1987). Courts have allowed compensation when a lawyer is required to withdraw after finding that the lawyer may be called as a witness to testify in the litigation of the client. *Allen v. Ross,* 199 Wis. 162, 225 N.W. 831, 833 (1929). Similarly, where an unforeseeable conflict of interest arises after the attorney accepts the client's case, the award of a fee is permissible. *See Phelps Steel, Inc.,* 511 N.E.2d at 44.

▮ The appellants seek complete forfeiture of the fee by the St. Louis lawyers. Complete forfeiture, however, is warranted only when a lawyer's clear and serious violation of a duty to a client is found to have destroyed the client-lawyer relationship and thereby the justification for the lawyer's claim to compensation. *See* Restatement (Second) of Trusts § 243 (1959); *cf.* Restatement (Second) of Agency § 456(b) (1958) (willful and deliberate breach disentitles agent to recover in quantum meruit when agency contract does not apportion compensation); *see also* Restatement of The Law Governing Lawyers, Tentative Draft No. 4, § 52. Whether the breach in the lawyer-client relationship involves knowing violation or disloyalty to a client is also a factor. *See* Restatement (Second) of Agency § 469; *see also Blanton v. King,* 73 Mo.App. at 150. Forfeiture is generally inappropriate when the lawyer has done nothing willfully blameworthy, for example, where a conflict of interest arises after the lawyer accepts the client's case and the conflict could not have been discovered at the time the attorney accepted the case. *See* Restatement of The Law Governing Lawyers, Tentative Draft No. 4, § 49; *see also Phelps Steel, Inc.,* 511 N.E.2d at 44. Forfeiture serves no purpose when the relationship terminates as a consequence of events beyond the lawyer's reasonable control. The record in this case does not suggest that forfeiture is appropriate.

▮ Since the record of this case does not reflect that the St. Louis lawyers have engaged in activity that would prohibit recovery of a fee, the next issue is the appropriate measure of recovery. The St. Louis lawyers failed to fulfill the terms of their contingent fee contract with the client; therefore, contractual recovery is not proper. *See Plaza Shoe,* 636 S.W.2d at 58–60. Once termination of the lawyer-client relationship has occurred before completion of a contingent fee contract, the lawyers' only recovery could be in quantum meruit for benefits conferred. *Id.*

▮ *Plaza Shoe* limits the quantum meruit recovery of attorneys employed under a contingent fee contract who are discharged without cause before settlement or judgment, but who have rendered valuable services to the reasonable value of the services rendered, not to exceed the contracted amount, and payable only upon occurrence of the contingency. *Plaza Shoe,* 636 S.W.2d at 59–60. In considering a fair fee in quantum meruit, however, other principles must not be ignored. The client should not have to pay for duplicative services. The St. Louis attorneys should not recover for work that had to be repeated by the Springfield attorneys. As in all cases involving quantum meruit recovery, the services must have enriched the client in the sense of benefits conferred. *Vosevich v. Doro, Ltd.,* 536 S.W.2d 752, 756 (Mo.App.1976). An unjust enrichment quantum in a case may be nothing if the actual value to the client was none.

The client complains that the trial court awarded the St. Louis lawyers all of the time spent at the lawyers' customary hourly rate. The client asserts that the St. Louis lawyers failed "to substantiate their claim" and that the trial court ignored the factor "results produced," [*See Rule 4, 1.5(a)(4)*], which the client claims were negligible. While the client's point as phrased does not directly claim error relative to principles of quantum meruit recovery, the point cannot be ignored in that

regard. The findings of the trial court in this case do not reflect that the award of attorneys fees was the measure of the actual value to the client. The trial court simply found that the St. Louis attorneys' efforts contributed to "the final victory."

It is necessary to reverse the case and remand for specific findings by the trial court of benefits conferred upon the client based upon actual value to the client. The client should be charged a fee for services only if the services unjustly enrich the client. From the record, this Court cannot be certain of the value to the client of the services of the St. Louis lawyers. It is doubtful that the value of the lawyers' services is one hundred percent of the time spent at the customary hourly fee. Nor are the lawyers' services worth zero. There is no question that the St. Louis lawyers commenced the litigation and kept it alive for six years, and that they were engaged in protracted discovery. The trial court may consider additional factors in determining an appropriate recovery for benefits conferred. The trial court should identify and value those services of the St. Louis lawyers rendered to the client that allowed the Springfield lawyers more efficiently to handle the lawsuit by providing some bases for the work of the Springfield lawyers.[1]

■ Appellants advance a total of six points for reversal, the second, fifth and sixth of which are covered in the foregoing discussion. Appellants assert in their third point that the St. Louis lawyers are "estopped" from claiming more than $30,000 in fees because they submitted a statement for this amount when withdrawing. The statement was described by Wolff and Murphy as a settlement offer and the trial court could reasonably have found that it

was no more than a rejected offer. Appellant's fourth point asserts that Murphy had no contract of employment with the client and should seek his compensation from Wolff. In a case that involves quantum meruit as a basis for recovery, the argument is without merit. The first point raised by appellants argues that the trial court erred in the findings made and should have made different findings. The claim is not appropriate for appeal. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc. 1976). As to appellant's complaints regarding the trial court's conclusions, the law as it should be applied to the facts of this case is set forth above.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

ROBERTSON, C.J., HOLSTEIN and BENTON, JJ., and SHANGLER, Special Judge, concur.

BLACKMAR, J., dissents in separate opinion filed.

RENDLEN, J., concurs in opinion of BLACKMAR, J.

THOMAS, J., not participating because not a member of the Court when case was submitted.

BLACKMAR, Judge, dissenting.

I do not disagree with the legal principles enunciated in the principal opinion. The St. Louis lawyers, according to the trial court's findings, withdrew with the assent of their client. They are entitled to recover only in quantum meruit, with their recovery measured by the value of their services to the client. These principles are established in our carefully considered and well reasoned opinions in *Craig v. Jo B. Gardner, Inc.*,

---

1. The Springfield lawyers testified that the work of the St. Louis lawyers was without value to them. The trial court apparently found otherwise, but will be able, if necessary, to reassess the testimony of the Springfield lawyers in view of the issue on remand. This Court notes that it is apparent that if the client benefitted in this case as a consequence of the services of the St. Louis lawyers, so did the Springfield lawyers, who "drove a hard bargain" with the client. Any rights of the St. Louis lawyers against the Springfield lawyers are not at issue. This Court, charged with upholding the high standards of the profession, strongly suggests that it is appropriate for a successor-lawyer objectively to examine the efforts of a previous lawyer and to use good faith in effecting a resolution of the first lawyer's claim, if any, to a fee. Lawyers should avoid whenever possible shifting the burden of resolution to the client. When there is a change in counsel, the lawyers should try to effect a mutually satisfactory arrangement.

586 S.W.2d 316 (Mo. banc 1979), and *Plaza Shoe Store v. Hermel, Inc.*, 636 S.W.2d 53 (Mo. banc 1982). I have found no cases from other jurisdictions which enunciate the governing law so clearly.

I am persuaded, however, that the trial judge was quite aware of the governing rules, that he applied them in reaching his judgment, that his finding that the St. Louis lawyers "did contribute to the final victory" is clearly supported by the evidence, that it is a sufficient finding of "value to the client," and that we may properly dispose of the case without further proceedings.

The principal opinion holds that more findings are necessary. The problem with this disposition is that no additional findings were requested. The trial judge is not obliged to make any findings unless requested. *Rule 73.01(a)(2)* so provides, and continues as follows:

> All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached.

The burden is on the appellants to demonstrate error in the trial court's judgment. The first step in demonstrating error is a proper brief. We would be entirely justified in dismissing the appeal because of the appellants' flagrant violation of *Rule 84.-04(c)*. The appellants do not fairly state the facts relevant to the questions to be determined. Their statement sets forth, without qualification, items from their own evidence which the trial court was not obliged to credit. It fails to state the facts which could have been found in support of the judgment. The fault is compounded by the utter absence in the initial brief of any reference to *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), and by citation of pre-*Murphy* cases. When the respondents protested about the omission, the appellants in their reply brief tendered the wholly unmeritorious proposition that *Murphy v. Carron* applies only to jury-waived cases, and not to cases of an equitable nature in which there is no jury trial of right. Counsel for the appellants have not provided the professional assistance that

the Court has a right to expect. The principal opinion nevertheless indulges them by going beyond their arguments.

By practice long established we confine appellate relief to the points asserted by counsel, unless extraordinary circumstances are present. Of the six points in the appellants' brief, the only one bearing on the issues dealt with in the principal opinion reads as follows:

THE TRIAL COURT ERRED IN AWARDING MOVANTS A FEE BASED ON THEIR ALLEGED HOURS WORKED FOR THE REASON THAT THE COURT FAILED TO CALCULATE THE FEE UNDER THE *PLAZA SHOE* CRITERIA, AS MOVANTS FAILED TO SUBSTANTIATE THEIR CLAIM AND THE TRIAL COURT IGNORED THE FACTOR "RESULTS PRODUCED," WHICH HERE WERE NEGLIGIBLE.

In arguing this point, the appellants first complain that Wolff reconstructed his records without presenting time sheets. The trial court was satisfied that his hourly claims were accurate. Appellants next argue that no results were achieved because the St. Louis lawyers got no judgment or settlement offer. The balance of the argument simply asks the appellate courts to reweigh the trial court's determination.

Neither an offer or a judgment was essential to an award in quantum meruit, if the attorneys' services had value. The appellants at trial did not ask for or argue for a determination as to the value of each segment of the attorneys' efforts. Had they done so, the trial judge would surely have obliged them, or would have stated explicitly what I believe is implicit in his holding, which is that all of the services contributed to the final victory. The appellants do not demonstrate error in the trial court's findings and conclusions.

The evidence supports a finding that the St. Louis lawyers filed a response in litigation instituted by the opposing party, resisted an application for temporary injunction, undertook discovery, searched through voluminous documents, obtained an important formula under seal which was made available to their successors, filed an

action in federal court when matters were not moving (as is so often the case) in the Circuit Court of St. Louis County, secured correction in federal court of an improper dismissal with prejudice, and turned their files and discovered documents over to their successors, so as to present them with a lawsuit in place. The trial judge could clearly find that all of these services were necessary in the processing of the litigation and that, because the appellants availed themselves of the benefit of these services, they should be liable in quantum meruit. The trial court could also find that the value of the services to the clients is properly measured by the lawyers' customary hourly rates. He properly rejected the St. Louis lawyers' claim for a percentage of the recovery. Considering the trial court's finding that the services contributed to the result, the fees awarded seem quite modest in view of the settlement amount and the Springfield lawyers' contingent fee.

So I submit that no remand is necessary or desirable. But if there is to be a remand, it should be free from encumbrances such as the suggestion in the principal opinion that "it is doubtful that the value of the lawyers' services is one hundred percent of the time spent at the customary hourly fee." There is no basis for that suggestion, unless we are to usurp the province of the trial judge. As I have said, the record would support a contrary finding, and, by the norms of appellate procedure, we should assume that such a finding has been made. Likewise impertinent is the suggestion that the trial court "will be able, if necessary, to reassess the testimony of the Springfield lawyers ..." that the services of the St. Louis lawyers were without value to them. The trial judge must necessarily have rejected that testimony in finding as he did. I am not aware of local practice on remand. If the case goes back to the same trial judge, then we should not encumber his judgment by suggestions such as this. If a different trial judge is to be named, there would be gross inefficiency which demonstrates the wisdom of following the normal rules of appellate practice.

Inasmuch as the principal opinion undertakes to instruct the trial court about the additional findings which should be made, the instruction should be complete. The trial court should realize that the hourly rate is only one circumstance to be considered, and does not operate as either a ceiling or a floor. *Craig*, 586 S.W.2d 316, 326 (Mo. banc 1979), is instructive. There the trial court allowed the withdrawing attorneys a percentage of the recovery. The Court found error and determined, ourselves, what a proper award would be. The opinion considered the modest recovery, which did not reward successor counsel very well. Here the recovery is substantial and the successful counsel were well paid. There are circumstances in which a contingency enhancement is appropriate, even when the lawyer has no claim to a percentage of the recovery. *See* the opinion of Judge John R. Gibson in *Morris v. American National Can Corp.*, 952 F.2d 200, 204–07 (8th Cir.1991). The court, in determining the value of the services to the clients in this case, is quite entitled to consider the gross recovery in excess of $2,000,000 and the length of time between the rendition of the services and the termination of the case. The present award seems quite reasonable to me, based on the factors the trial judge could have considered.

An example might clarify my conception of what the trial judge found. After discovery in the state court phase of the St. Louis action came to a halt because of constant objections and the trial judge's delay in ruling, the plaintiffs filed suit in federal court. That suit presented a jurisdictional problem which was initially ruled favorably to the plaintiff. After considerable discovery had been had, the federal judge reversed his position and dismissed the suit. The trial judge well could find that this abortive suit served as a vehicle for discovery which was of value in obtaining the final result. He should not be obliged to disallow compensation for detours and misadventures, such as the substantial time required in briefing the jurisdictional issue, or time required in obtaining continuances, even though tangible val-

 

ue cannot be demonstrated in the time so spent. The case is overwhelming for a finding that all services contributed to the settlement.

I also believe that it is inappropriate here to lecture counsel about the desirability of prior counsel and successor counsel reaching an agreement. I do not dispute the abstract proposition, but it has no pertinence to this case. Nor is the comment that the Springfield lawyers "drove a hard bargain" in order. They were asked to make a massive commitment of time to a lawsuit which, at the time, might have appeared to have very doubtful prospects. There is no indication that other lawyers were willing to make this commitment. The new counsel properly bargained with appellants and their regular corporate counsel about the contingency percentage appropriate to the undertaking. At the time, they apparently had no contact with the St. Louis lawyers, but expressed concern about the fee that would be due their predecessors. It was entirely appropriate under these circumstances for the clients to agree, with input from their corporate counsel, that they would be responsible for any fees owed to the St. Louis lawyers. It is not necessary for the principal opinion even to suggest that the St. Louis lawyers might have a claim against the Springfield lawyers. The clients demanded that the St. Louis lawyers turn over their entire work product, and surely are liable for compensation to the extent that this product had value, as the trial court found it did.

There is another problem with the principal opinion. Although judges do not have to make findings in court-tried cases unless requested, I think that it is desirable that they do so. When I practiced, I appreciated judges who were willing to explain their rulings. Here the trial court made findings which are legally correct, and sufficient to support the judgment. Now he is told that they are "incomplete," even though no further findings were requested. Trial judges will take the hint, and will elect to say nothing except "judgment for the plaintiff" or "judgment for the defendant." The word will get out that they are in trouble if they say too much. This is not desirable.

We should finally dispose of cases and issues on appeal, if this is possible. Remands should be ordered only when strictly necessary. *Helm v. Wismar,* 820 S.W.2d 495 (Mo. banc 1991). Here the record amply supports the judgment rendered, as against any challenge made by the appellants either in the trial court or on appeal. The remand is an unwise departure from the normal course of appellate practice.

I would affirm.