[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-14882

_____

D.C. Docket No. 2:11-cv-00455-AKK

LAURA ELLEN LEWIS,

Plaintiff-Appellant,

versus

HASKELL SLAUGHTER YOUNG & REDIKER, LLC,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(September 11, 2014)

Before HILL and COX, Circuit Judges, and MIDDLEBROOKS,* District Judge.

_____

*Honorable Donald M. Middlebrooks, United States District Judge for the Southern District of
Florida, sitting by designation.

PER CURIAM:

Laura Ellen Lewis appeals the district court's order awarding attorneys' fees to her former attorney, Alicia Haynes and Haynes' firm, Haynes & Haynes, P.C. (collectively referred to as "Haynes"), after Haynes terminated their attorney-client relationship and filed a motion for an attorney's lien on Lewis' judgment in this employment-discrimination action.  For the following reasons, we affirm the district court's fee award.

I.

Lewis and Haynes entered into an attorney-client relationship that was codified in a contingency fee agreement, which provided that Haynes would receive forty-five percent of any recovery obtained during her representation of Lewis and that she would be entitled to a lien on the judgment.  The contract expressly waived a fee in the absence of any recovery.  The agreement also provided that Haynes could terminate the agreement if Lewis made it "unreasonably difficult" for Haynes to represent her or for any other "just cause," but it did not specify what fee, if any, Haynes would obtain in the event of such a termination.

Represented by Haynes, Lewis filed this employment-discrimination action against Haskell Slaughter Young & Rediker, LLC, alleging violations of Title VII of the Civil Rights Act of 1964 and various state law claims.  During the discovery

2

phase of this litigation, Lewis sent an email to an associate at Haynes' firm requesting various information about depositions and witnesses. Haynes considered the e-mail to be derogatory, accusatory, and demanding. Shortly thereafter, Haynes informed Lewis that she would be terminating their attorney-client relationship. Haynes did not notify the district court of her withdrawal until several weeks later. During the interim, Haskell Slaughter sent Haynes an offer of judgment for $85,000, which Haynes forwarded to Lewis. Lewis, represented by different counsel, filed a notice of acceptance of the judgment, and, on the same day, Haynes filed a motion to withdraw and a notice of attorney's lien against the judgment, requesting *quantum meruit* recovery for her work. Lewis opposed the fees request on the grounds that Haynes withdrew prior to recovery and was not entitled to any fee.

The district court recognized that Alabama law does not directly address the questions presented here. Nevertheless, it considered the laws of other states and concluded that Haynes was entitled to attorneys' fees in *quantum meruit* because just cause existed for the termination of the attorney-client relationship. The district court awarded Haynes $38,250. [1]

II.

---

[1] At an evidentiary hearing, Haynes expressly stated that she was *not* seeking recovery under her contract with Lewis and was seeking recovery in *quantum meruit* in the amount of $50,568.50. In additional briefing to the district court, Haynes voluntarily agreed to accept $38,250, which was 45 percent of the $85,000 judgment.

On appeal, Lewis contends that the district court abused its discretion by awarding attorneys' fees to Haynes.  Lewis argues that Haynes forfeited her right to any fee by unilaterally terminating the attorney-client relationship without just cause.  Additionally, Lewis asserts that the district court abused its discretion by: (1) awarding fees under a *quantum meruit* theory, as Haynes had operated with unclean hands; and, (2) by awarding an unreasonable amount of attorneys' fees. Moreover, Lewis contends that the district court erred by failing to enter a judgment resolving the underlying suit between Lewis and Haskell Slaughter on the date that she filed her notice of acceptance of judgment.[2]

We review decisions regarding attorneys' fees and costs for an abuse of discretion.  *Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 678 F.3d 1199, 1201 (11th Cir. 2012).  An abuse of discretion exists "only when a decision is in clear error, the district court applied an incorrect legal standard or followed improper procedures, or when neither the district court's decision nor the record provides sufficient explanation to enable meaningful appellate review." *Id.*

The district court began by correctly observing that the rights and obligations of a party to a contingency fee contract are governed by state law. *Zaklama v. Mount Sinai Med. Ctr.*, 906 F.2d 650, 652 (11th Cir. 1990).  Alabama law provides that, where a contingency fee arrangement exists, a law firm is not

---

[2] We note that Haynes concedes that Lewis is entitled to a judgment on her employment-discrimination claim, but contends that it is subject to her lien.

4

entitled to any fee until the firm recovers on the underlying claim or some part of it. As a result, abandonment of the suit before the litigation ends deprives the firm of any right to compensation. *Troy v. Hall & Farley*, 47 So. 1035, 1036 (Ala. 1908) (holding that the firm was not entitled to compensation where it had abandoned the case by not doing anything other than reading briefs and court opinions filed in the case for years).

However, the attorneys in *Troy* voluntarily abandoned the case without just cause. *Id.* In *Howard v. McCarson*, 110 So. 296, 297 (Ala. 1926), the Alabama Supreme Court opined that where an attorney abandons his client "*without justifiable cause . . .* he forfeits all right to compensation, even for services already rendered . . . ." (emphasis added). The district court noted that this language implies that an attorney who withdraws *with* justifiable cause may be entitled to recover reasonable compensation. The district court did not abuse its discretion in reaching this conclusion.

Furthermore, in *Triplett v. Elliott*, 590 So.2d 908, 910 (Ala. 1991), the Alabama Supreme Court affirmed the award of fees to an attorney who was discharged without cause, or otherwise prevented from full performance. The Court held that under such circumstances, the attorney is entitled to be reasonably compensated for services rendered before such discharge. *Id.* The Court said this also appears to be the prevailing rule where the contract calls for a contingent fee.

5

*Id.*  Finally, the Court opined that a "presumption of correctness" accompanies the trial court's judgment when it has made findings of fact in actions regarding attorneys' liens.  *Id.*

Although there appears to be no Alabama case in which it is the attorney demanding fees who terminated the attorney-client relationship prior to a successful recovery, from the foregoing cases we infer that the Alabama courts would award fees to an attorney who withdraws *with just cause* prior to the conclusion of a contingent fee contract.  We conclude that the Alabama courts would follow the modern majority rule that an attorney who withdraws from a case for good cause or with appropriate justification may recover in *quantum meruit* for services he rendered prior to the withdrawal.  *See In re Carlson*, 263 F.3d 748, 750 (7th Cir. 2001) (establishing that a lawyer has a legally enforceable interest "in a potential contingent fee . . . before judgment or settlement . . . even if he withdraws rather than being terminated, provided that the withdrawal is for good cause.").

The issue in this case, then, is whether Haynes withdrew with just cause. This is, of course, a legal conclusion we draw from the facts of the case.  *See Augustson v. Linea Aerea Nacional-Chile S.A.*, 76 F.3d 658, 663 (5th Cir. 1996). Broadly speaking, "just cause exists when the client has engaged in culpable conduct."  *Id.*  Examples would be insistence on the assertion of a fraudulent claim; failure to cooperate; refusal to pay; humiliation of the attorney or other

6

similar conduct on the part of the client.  *Id*.  The focus is on the cause of the attorney-client disagreement and the reason for the withdrawal.  *Id*.  The district court findings of fact in this regard are presumed correct absent clear error. *Triplett*, 590 So. 2d at 910.

In this case, the district court found that the evidence demonstrated that, at the time she sent the email, Lewis no longer trusted or accepted the professional decisions of Haynes and her firm.  The court concluded that Lewis' testimony at trial that she called Haynes "clueless" indicated a complete lack of confidence in Haynes.  Furthermore, the evidence was that the parties' relationship had completely deteriorated to the extent that Haynes could no longer continue her representation of Lewis.  From these facts, the district court concluded that Haynes was justified in her withdrawal from representation of Lewis and that it was no longer in Lewis' best interest that Haynes represent her.

Furthermore, the district court rejected Lewis' claim that Haynes acted with unclean hands in her conduct of the case or her withdrawal.  The court engaged in a lengthy and thoughtful consideration of the facts regarding this claim, including the nature of the lawsuit and the various factors impacting settlement, and concluded that Haynes and her firm conducted the litigation in a competent and professional manner with "no evidence of wrongful or unprofessional conduct by Haynes or [her firm]."

Thus, under the rule the district court concluded that Alabama would follow, Haynes and her firm are entitled to recovery in *quantum meruit* of just compensation for services rendered. Haynes and her firm worked on this matter for eighteen months and performed, among other things, settlement negotiations, drafting of the EEOC charge and complaint, and extensive paper discovery. The district court determined that $38,250.00 was a reasonable award in *quantum meruit*. We find no abuse of discretion here.

### III.

For the foregoing reasons, we affirm the judgment of the district court awarding Haynes attorneys' fees in the amount of $38, 250.00. The case shall be remanded, however, so that the district court may enter a separate judgment for Lewis *nunc pro tunc* as of April 26, 2012, the date she accepted defendant's offer of judgment.

AFFIRMED and REMANDED.

8

MIDDLEBROOKS, District Judge, dissenting:

A lawyer is a fiduciary, entrusted to handle a client's affairs with competence, diligence, and loyalty. In the face of looming discovery deadlines, and with virtually no discovery completed, lawyer Alicia Haynes emailed her client: "I have decided the best course of action is to withdraw from your case effective immediately . . . . Your file has been boxed and is in the lobby with the receptionist." Instead of seeking permission from the court to withdraw or taking steps to protect the interests of her client, Ms. Haynes gave a "heads up" to opposing counsel notifying him of her withdrawal. The opposing party promptly filed an Offer of Judgment, exposing the client to costs if not accepted within fourteen days. Only after a notice of acceptance was filed through other counsel was permission to withdraw sought.

I agree with the majority that the case should be remanded for entry of judgment *nunc pro tunc* as of April 26, 2012. However, I cannot join the majority opinion affirming an award of attorney's fees for two reasons:

(1) Under Federal Rule of Civil Procedure 68, upon the filing of the written notice accepting the offer, judgment should have been immediately entered by the clerk. The ancillary decision awarding fees is "beyond the pale of existing

jurisdiction, and thus must be a nullity." *Broughten v. Voss*, 634 F.2d 880, 883 (5th Cir. 1981).[1]

(2)  Counsel's unilateral and precipitous withdrawal without consultation with the client or permission from the tribunal constituted abandonment of the suit and precludes compensation.  Not only did counsel terminate representation before obtaining permission from the trial judge, but also the trial judge employed an erroneous standard, first in granting the tardy motion to withdraw and then in finding justification sufficient to warrant compensation.

For these reasons, as discussed in detail below, I respectfully dissent.

## I.

In remanding this case so that the district court can enter judgment *nunc pro tunc* as of April 26, 2012, the majority recognizes that pursuant to Federal Rule of Civil Procedure 68, judgment should have been entered by the clerk immediately upon filing of the notice accepting the offer of judgment.[2]  A Rule 68 offer of judgment and acceptance is self-executing.  *See Perkins v. U.S. W. Commc'ns*, 138 F.3d 336, 338 (8th Cir. 1998) ("Rule 68 leaves no discretion in the district court to do anything other than enter judgment once an offer of judgment has been accepted."); *Mallory v. Eyrich*, 922 F.2d 1273, 1279 (6th Cir. 1991) ("By directing

---

[1] *Bonner v. City of Pritchard*, 666 F.2d 1206, 1209 (11th Cir. 1987) (en banc), adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

[2] Rule 68 provides in part: "If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment."  Fed. R. Civ. P. 68.

that the clerk *shall* enter judgment after proof of offer and acceptance have been filed, the explicit language of the rule signifies that the district court possesses no discretion to alter or modify the parties' agreement."). The district court's jurisdiction under 18 U.S.C. § 1331, which was based upon Title VII of the Civil Rights Act of 1964, was therefore at an end and any relief from judgment could only have been sought pursuant to Federal Rule of Civil Procedure 60. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 114 S. Ct. 1673 (1994). The district court lacked jurisdiction to decide the subsequently filed motion to withdraw and notice of lien.[3]

Under circumstances even less clear than those presented here, our predecessor circuit has held that a district court lacked ancillary jurisdiction to resolve a fee dispute between a party and withdrawing counsel. *See Broughten*, 634 F.2d at 882-83. Jurisdiction there involved the federal securities laws and, during the course of the litigation, the plaintiff fell behind on payments to counsel and the law firm moved to withdraw. *Id*. at 881. The trial judge required the plaintiff to show cause why counsel should not be allowed to withdraw. *Id.* The plaintiff responded that the law firm had used improper billing methods, the firm

---

[3] We always have the "power" and "obligation" to examine the district court's subject matter jurisdiction. *See Fitzgerald v. Seaboard Sys. R.R., Inc.*, 760 F.2d 1249, 1251 (11th Cir. 1985) (citing *Philbrook v. Glodgett*, 421 U.S. 707, 95 S. Ct. 1893 (1975); *City of Kenosha, Wis. v. Bruno*, 412 U.S. 507, 511, 93 S. Ct. 2222, 2225 (1973)). We review questions of subject matter jurisdiction *de novo*. *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 408 (11th Cir. 1999) (citations omitted).

had agreed to go forward if she made payment of a certain amount (which had been paid), and her lawsuit would be prejudiced if the firm were allowed to withdraw. *Id.* After a hearing, the trial judge allowed the law firm to withdraw but ordered that it was not entitled to any further fee. *Id.*

Writing for the Fifth Circuit, Judge Tjoflat found that the fee decision was outside of the court's jurisdiction and therefore a nullity. *Id*. at 883. In doing so, he saw a distinction in the trial court's role in cases where a client sought to discharge and substitute counsel and those where a lawyer seeks to withdraw voluntarily from representation. *Id.* at 882-83. Where a client seeks to change counsel during the pendency of a case, Judge Tjoflat found the law "well settled" that a district court could condition substitution on the payment of fees or the posting of security. *Id*. at 882 (quoting *Nat'l Equip. Rental, Ltd. v. Mercury Typesetting Co.*, 323 F.2d 784, 786 (2d Cir. 1963)). However, where a lawyer seeks to withdraw voluntarily, the trial judge's responsibility is "to assure that the prosecution of the lawsuit before it is not disrupted by the withdrawal of counsel, and that the withdrawal of counsel is for good cause." *Id.* at 882-83. "This by itself is adequate to protect the interests of the parties before the court and assure fair treatment of the court's officers." *Id.* at 883.

Here, upon the filing of the acceptance of the offer of judgment, the case was over. There was no risk of disruption of the court's schedule and any risk of

12

harm to the client caused by the sudden and voluntary withdrawal that had already occurred. The issue of any attorney fee that might be owed, together with any claim for malpractice based upon the actions of counsel, was within the jurisdiction of the state courts and beyond the subject matter jurisdiction of the district court.

## II.

In reviewing decisions involving conduct of lawyers, this Circuit applies the "clearly erroneous" test while carefully examining the district court's application of relevant ethical standards. *Brennan's, Inc. v. Brennan's Restaurants, Inc.*, 590 F.2d 168, 171 (5th Cir. 1979) (citing *Woods v. Covington Cnty. Bank*, 537 F.2d 804, 810 (5th Cir. 1976)). "District courts enjoy no particular functional advantage over appellate courts in their formulation and application of ethical norms." *Woods*, 537 F.2d at 810.

Assuming the district court had subject matter jurisdiction, the fundamental issue in this appeal is whether the law firm appropriately and with just cause withdrew from representing its client. Any award of fees depends upon the answer to this question. If counsel abandoned the representation without just cause, under Alabama law, fees are precluded. *Howard v. McCarson*, 110 So. 296, 297 (Ala. 1926); *Amason v. Harton*, 89 So. 37, 37 (Ala. 1921); *Troy v. Hall & Farley*, 157 So. 1035, 1036 (Ala. 1908).

A.    Background

13

In March 2012, the case had been pending for thirteen months.[4] Plaintiff's

counsel had filed five motions for extension of deadlines. In February 2012, the

trial judge indicated that no further extensions would be granted absent good cause,

and plaintiff's subsequent motion (filed 2/24/12) had been denied except with

respect to expert reports. No depositions had been taken; no dispositive motions

had been filed; no expert reports had been exchanged.

---

[4] The docket in the district court reflects the following:

| | |
|---|---|
| 2/8/11 | Complaint |
| 3/28/11 | Answer |
| | Scheduling Order |
| |     Discovery deadline 12/16/11 |
| |     Dispositive motions deadline 1/31/12 |
| |     Trial 4/12 |
| 9/30/11 | Plaintiff's Motion for Extension of Time for all deadlines by 60 days |
| | Order granting extension |
| |     Discovery deadline 1/16/12 |
| |     Dispositive motions deadline 2/29/12 |
| |     Trial 5/21/12 |
| 10/26/11 | Plaintiff's Motion for Extension of Time for expert reports |
| 1/17/11 | Joint Motion for 90 Extension of Time (filed by Plaintiff) |
| | Order Granting Motion in Part |
| |     Discovery deadline 3/2/12 |
| |     Dispositive motions deadline 4/16/12 |
| |     Trial 7/12 |
| 2/16/11 | Plaintiff's Motion for 60-Day Extension of Time to complete discovery |
| | Order Granting Motion for Extension of Time |
| |     Discovery Deadline 4/30/12 |
| |     Plaintiff's expert reports due 3/30/12 |
| |     Dispositive motions deadline 5/15/12 |
| |     **No further extensions will be granted absent good cause shown** |
| 2/22/12 | Plaintiff's Motion to Modify Court's Order Extending Deadlines |
| | Order Denying Motion to Modify Extending Deadlines except: |
| |     Plaintiff's expert report due 3/30/12 |
| |     Defendant's expert report due 4/16/12 |

14

On Friday, March 9, 2012, Ms. Lewis (the client) emailed Ms. Haynes' associate, Ms. Cleveland: "[Haynes] rarely communicates with me, which makes you my contact on outstanding issues. It's unacceptable for you to be uninformed on these things. Has there been no progress as to Becky, the expert, or depo prep dates? . . . Just as there was no progress on the [motion] to compel for 2 weeks and until I emailed to find out the discovery status. If no one tells me what's going on, I assume there has been no progress . . . all while time is passing." Evidentiary Hearing Notebook, at Tab 34.[5]

---

[5] The exchange leading up to the March 9, 2012 email is unremarkable and simply shows a client asking for information (and lawyers not being very helpful):

> **Lewis to Cleveland:** Hey I see they filed a [response] – they hadn't as of 6 last night and I was hoping that somehow they wouldn't[.] Anyway, it's just test symbols for me on [P]acer, so will you send it to me, and our reply? . . . Thanks – lel.
>
> ***
>
> **Cleveland to Lewis:** Hi LEL! See attached, which was filed after 10:30 last night.
>
> ***
>
> **Lewis to Cleveland:** Thanks – just glancing at it, whatever they plan to produce by "March 30" will not work since depos are scheduled (at least to my knowledge) to start 3/26. Was the schedule ever finalized? Will you please send me the reply when it's ready?
>
> ***
>
> **Cleveland to Lewis:** We hope to have it finalized next week, so please continue to hold those dates. I'll forward you what we file, and will keep you updated. Thanks. Have a good weekend!
>
> ***
>
> **Lewis to Cleveland:** OK- but I sent a second message to you – What about Becky, the expert, and what about depo prep dates. . . . Where are you on those things?
>
> ***
>
> **Cleveland to Haynes:** Would you like to respond, or should I? Normally when I do, she gets more saucy, and when you do, it seems to pacify her. You just have that Midas touch!

15

On Monday March 12, 2012, Ms. Haynes responded:

> Based on your recent email message on Friday it appears you have no confidence in the manner I am litigating your case.  The tone of your email was also very derogatory, accusatory, and demanding of me and my staff.  As such I have decided the best course of action is to withdraw from your case effective immediately and for you to seek new counsel. . . . I have drafted and filed a reply to the defendant's response in opposition to the motion to compel that we filed on your behalf.  We will take no further action on your behalf. . . . Your file has been boxed and is in the lobby with the receptionist.  You may pick this up at your convenience. . . . We wish you the best of luck in this endeavor.

Evidentiary Hearing Notebook, at Tab 35.

On March 16, 2012, Ms. Haynes followed up her email with a certified letter

to her client:

> This will confirm our conversation of March 12, 2012, where I informed you I am withdrawing from your case effective immediately.

> I drafted and filed a reply to the defendant's response in opposition to the motion to compel that we filed on your behalf.  We will take no further action on your behalf unless court filings require immediate attention.  I will officially withdraw with the court from your case on April 2, 2012.  Please let me know if you need assistance finding counsel.

---

\*\*\*

**Haynes to Cleveland:**  Tell her I am handling and out of town until [n]ext week[.]

\*\*\*

**Cleveland to Lewis:**  Alicia is handling these matters.  She is out of town until next week.  I'll follow up with her and let you know.  Thanks.

Evidentiary Hearing Notebook, at Tabs 33, 34.

16

> I have also enclosed a copy of the current docket sheet in this matter for your review in regard to deadlines and the status of pending motions.
>
> Your file has been boxed and is in the lobby with the receptionist. You may pick this up at your convenience.

Evidentiary Hearing Notebook, at Tab 36.  Ms. Haynes did not file a motion to withdraw on April 2, 2012, as promised.  On April 9, 2012, she emailed her client:

> Laura Ellen, Have you had a chance to locate other representation?  I have not had anyone contact me about your client file nor have you picked up your file.  I am planning on withdrawing with the court today and your other counsel should be apprised so they can file a notice of appearance.  Thanks, Alicia.

Evidentiary Hearing Notebook, at Tab 40.

Then, in what she described as a "heads up," Ms. Haynes told her opposing counsel, "I [will] be withdrawing from the file."  Evidentiary Hearing Tr. at 10. Opposing counsel quickly responded with an offer of judgment under Rule 68.[6] On April 26, 2012, new counsel appeared for Ms. Lewis.  That same day, Ms. Lewis accepted the offer of judgment and then Ms. Haynes sought court approval to withdraw as counsel.

B.    "Your file has been boxed and is in the lobby with the receptionist"

This Court has said that before granting a motion to withdraw, "it is incumbent on the court to assure that the prosecution of the lawsuit before it is not

---

[6] The operation of this Rule, particularly with respect to an abandoned plaintiff seeking new counsel late in litigation, both ratchets up the pressure on the plaintiff and works to discourage a new lawyer from taking her case.

17

disrupted by the withdrawal of counsel and that the withdrawal of counsel is for good cause." *Mekdeci v. Merrell Nat'l Labs.*, 711 F.2d 1510, 1521-22 (11th Cir. 1983) (quoting *Broughten*, 634 F.2d at 882-83)).  Under standards employed by the federal courts, withdrawal should be denied where the client's rights will be prejudiced by the delay caused by replacing counsel and where the trial calendar of the court will be dislocated so as to impede the interest of justice.  *Id.* at 1522 n.17.

In evaluating conduct of lawyers, this Court has looked to the Code of Professional Responsibility, ABA Canons, Ethical Considerations and Disciplinary Rules, Local Rules, and state case law.  *See id.*; *Woods*, 537 F.2d at 810.[7] Recently, in deciding whether lawyers effectively abandoned their client in an Alabama death penalty case, the Supreme Court relied in part on the Restatement (Third) of Law Governing Lawyers (1998).  *See Maples v. Thomas*, 132 S. Ct. 912, 922-23 (2012) (citing 1 Restatement (Third) of Law Governing Lawyers § 31 cmt. f (1998)).

Local Rule 83.1(e) of the United States District Court for the Northern District of Alabama prohibits the withdrawal of counsel without the court's approval and states: "attorneys shall be held at all times to represent the parties for whom they appear of record . . . until, after formal motion and notice to such

---

[7] Alabama law does not address what constitutes just cause for a lawyer to voluntarily withdraw from representation and preserve an entitlement to compensation.  The Alabama Supreme Court declined our invitation to provide guidance.

18

parties and to opposing counsel, they are permitted by order of court to withdraw from such representation." N.D. Ala. L.R. 83.1(e); *see also* ABA Model Code of Professional Responsibility, DR 2-110(A)(1) (1980) (lawyer may not withdraw without permission when tribunal rules so provide); Restatement (Third) of Law Governing Lawyers § 31(1) (2000) ("[a] lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation"); *Id.* § 31 cmt. c ("the lawyer should ordinarily continue to act for the client until the tribunal has approved withdrawal"; "A lawyer seeking leave of a tribunal to withdraw should avoid disclosure of confidential client information to the extent feasible.").

Ms. Haynes' communication to her client that she was withdrawing from representation "effective immediately" and that "your file has been boxed and is in the lobby with the receptionist" was a blatant violation of the rules of court and the laws governing counsel. In failing to timely file a motion to withdraw, she denied the trial judge the opportunity to exercise his responsibility to determine whether withdrawal so late in the litigation would prejudice Ms. Haynes' client or, alternatively, to extend the deadlines to allow the client to obtain new counsel. In ceasing representation yet failing to seek permission from the court, the client was placed in limbo. This effectively left the client stranded at a very vulnerable time in the litigation. Then, inexplicably, Ms. Haynes made it worse by giving

19

opposing counsel a "heads up" advising of her client's precarious and defenseless posture.

In this vulnerable position, opposing counsel presented a Rule 68 offer of judgment. According to the Supreme Court, application of Rule 68 requires plaintiffs to "think very hard" about whether continued litigation is worthwhile. *Marek v. Chesny*, 473 U.S. 1, 11, 105 S. Ct. 3012, 3017 (1985). This Court has explained that Rule 68 operates with a two-part approach as follows:

> First, Rule 68 allows a defendant to make a firm, non-negotiable offer of judgment. Unlike traditional settlement negotiations, in which a plaintiff may seek clarification or make a counteroffer, a plaintiff faced with a Rule 68 offer may only accept or refuse. If he accepts, the court automatically enters judgment in his favor; if he refuses, the case proceeds. Second, the Rule encourages plaintiffs to accept reasonable offers through what is referred to as its "cost-shifting" provision, which forces a plaintiff who refuses an offer and then ultimately recovers less at trial than the offer amount to pay the costs incurred from the time of the offer.

*Util. Automation 2000, Inc. v. Choctawhatchee Elec. Co-op., Inc.*, 298 F.3d 1238, 1240-41 (11th Cir. 2002).[8]

Ms. Haynes breached her duty to her client in curtailing representation and then waiting until the offer of judgment was made and accepted to seek approval to

---

[8] Rule 68 can present particular problems for plaintiffs and their counsel in civil rights and employment discrimination claims. *Marek* is demonstrative. The plaintiff, suing under 42 U.S.C. § 1983, rejected an offer of judgment for $100,000 "including costs now accrued and attorney's fees." *Id.* at 1241 n.3 (quoting *Marek*, 473 U.S. at 9, 105 S. Ct. 3012). The case went to trial and plaintiff was awarded $60,000. Plaintiff filed a request for costs and attorney's fees totaling around $171,000 ($32,000 for costs and fees incurred prior to the offer and $139,000 incurred after the offer). The parties agreed on the $32,000. However, the defendants opposed the $139,000, relying on Rule 68's cost-shifting provision, and the Supreme Court agreed. *Id.*

withdraw from the court.  It is hard to imagine a more total abandonment of a client's cause.  Based on counsel's failure to withdraw and her abandonment of her client, any request for fees should have been denied.

C.    The District Court Failed to Apply the Correct Legal Standard

It is unclear what standard the district court employed in considering whether Ms. Haynes was entitled to fees.  The court expressly said it was adopting the standard announced by the Fifth Circuit in *Augustson v. Linea Area Nacional-Chile S.A.*, 76 F.3d 658 (5th Cir. 1996), applying Texas law.[9]  *See* Order at p.14.  Under the rule set forth in *Augustson*, "an attorney [who], without just cause, abandons his client before the proceeding for which he was retained has been conducted to its termination, or if such attorney commits a material breach of his contract of employment, he thereby forfeits all right to compensation."  *Augustson*, 76 F.3d at 662 (quotations omitted).  Whether "just cause" exists will depend on the facts of each particular case, and "[g]enerally, just cause exists when the client has engaged in culpable conduct."  *Id.* at 663 (citations omitted).[10]

As the Fifth Circuit pointed out, "[t]he objectives of a hearing on cause to withdraw differ from the objectives of a hearing on attorney's fees, and because of

---

[9] The district court adopted the Fifth Circuit standard applying Texas law based on the absence of Alabama law.  *See supra* n.7.

[10] The *Augustson* court gave examples of cases from various jurisdictions where just cause was found.  These include "where the client attempts to assert a fraudulent claim; fails to cooperate; refuses to pay for services; degrades or humiliates the attorney; or retains other counsel with whom the original attorney cannot work."  *Id.*

21

these differences circumstances can arise that would authorize a trial court to permit counsel to withdraw but retain no fee." *Id.* at 664. "When considering a motion to withdraw, a trial court is given broad discretion in order to protect the best interests of the client." *Id.* That is similar to the standard employed in this Circuit: withdrawal should be denied where the client's rights will be prejudiced or where the court's calendar will be disrupted. *See Mekdeci*, 711 F.2d at 1521-22; *Broughten*, 634 F.2d at 882-83. "In such a setting, the court generally focuses on the presence of circumstances harmful to the attorney-client relationship, and inquiry into the cause of these circumstances is irrelevant. At a lien hearing, however, the focus of attention is on the cause of attorney-client problems." *Augustson*, 76 F.3d at 664.

In *Augustson*, as here, withdrawing counsel had taken no depositions and retained no expert witnesses to testify at trial. *Id.* at 661. The trial judge found that the clients had either lost faith or never had faith in the lawyer's ability sufficient to trust the firm's judgment. *Id.* at 662.[11] Nevertheless, the Fifth Circuit held that, at least where a lawyer could continue without violating ethical obligations, cause to withdraw under Texas Disciplinary Rule of Professional

---

[11] Unlike this case, in *Augustson*, counsel sought and obtained permission from the court to withdraw, citing Texas Disciplinary Rule of Professional Conduct 1.15(b). *See* Tex. Disciplinary R. Prof. Conduct 1.15(b)(4), (6) (allowing withdrawal where "a client insists upon pursuing an objective that the lawyer considers repugnant or imprudent or with which the lawyer has fundamental disagreement," or where "the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client").

Conduct 1.15(b) did not necessarily establish cause to recover compensation. *Id.* at

664. The *Augustson* court found that counsel had no justification or cause to

withdraw that would preserve an entitlement to compensation:

> A contrary rule would also encourage attorneys to withdraw from
> "bad" cases on the grounds that the client uncooperatively insists on
> going to trial, allowing the attorney to avoid the risks of representation
> without losing the benefits of an eventual recovery. It is in such "bad"
> cases that a client will have the most trouble finding another attorney,
> and the existence of an attorney's lien will make the search all the
> more difficult.

*Id.*[12]

In the instant case, the district court failed to consider the *cause* of the

attorney-client problems and reached a result inconsistent with *Augustson*. Instead,

the district court relied almost entirely on the state of the attorney-client

relationship at the time of withdrawal. The court, citing an unpublished decision

from the Seventh Circuit, found there to be "sufficient cause" for an attorney to

terminate the attorney-client relationship because "Lewis no longer trusted or

accepted the professional decisions of Haynes and the Firm." *See Goyal v. Gas

Tech. Institute*, 389 F. App'x 539, 544 (7th Cir. 2010) (citing an Illinois state court

holding which provides "an attorney may withdraw from a contingent fee case and

seek reasonable compensation for his services when a client's actions in rejecting

---

[12] No modern reported Texas case in a contingency fee case has ever found just cause sufficient to permit an attorney to withdraw but still be compensated. *See* David Hricik, *Dear Lawyer: If You Decide It's Not Economical to Represent Me, You Can Fire Me as Your Contingent Fee Client, But I Agree I Will Still Owe You a Fee*, 64 Mercer L. Rev. 363, 379 (2013).

his attorney's professional judgment result in a complete breakdown of the attorney-client relationship").[13]  Further, the district court found "sufficient evidence supporting Haynes and the Firm's entitlement to just compensation for services rendered," and then found "no evidence that Haynes or the Firm acted outside of the professional norms for zealously pursuing Lewis' interests in the underlying matter."

Other cases cited by the district court are inconsistent with its decision.  For example, the district court cited a Missouri Supreme Court decision, where the court reversed an award of attorney's fees with a remand for specific findings.  *See Int'l Materials Corp. v. Sun Corp., Inc.*, 824 S.W.2d 890 (Mo. 1992).  There, examples of the type of client conduct that could justify withdrawal preserving entitlement to compensation included perjury by the client; a client accusing the attorney of dishonesty; a client's refusal to communicate; or a total breakdown in communication between the attorney and client caused by the client.  *Id.* at 894. The district court also looked to a Montana case, but there the Montana Supreme

---

[13] The attorney-client breakdown in *Goyal* occurred because of the client's refusal to settle.  The Seventh Circuit found that the attorney's withdrawal and collection of fees was justified under Illinois law because the "complete breakdown" in the attorney-client relationship was caused by the client's recalcitrance in negotiating the case in the manner the attorney thought best.  *Id.* at 543 (quoting *Kannewurf v. Johns*, 632 N.E.2d 711, 714 (Ill. App. Ct. 1994)).  Moreover, in *Goyal*, the retainer agreement provided for counsel's withdrawal and collection of fees if the client unreasonably withheld consent to a settlement.  *Id.* at 540-41.

However, as the district court in this case pointed out, *Goyal*'s holding is contrary to the rulings in *Augustson* and the majority of jurisdictions, where "the failure of the client to accept a settlement offer does not constitute just cause for a withdrawing attorney to collect fees." *Augustson*, 76 F.3d at 663.  Nevertheless, the district court appears to have applied the minority Illinois standard to this case.

Court also reversed an award of attorney's fees, concluding good cause did not exist for withdrawal. *See Bell & Marra, PLLC v. Sullivan*, 6 P.3d 965, 971-72 (Mont. 2000) (financial concerns of the attorneys was not good cause to withdraw justifying compensation).

Just cause that can preserve entitlement to compensation as defined in the decisions listed above—and by most other jurisdictions that have considered the issue—requires egregious, intentional client conduct that frustrates the ability of a lawyer to complete representation. *See, e.g.*, *Faro v. Romani*, 641 So. 2d 69 (Fla. 1994) (the existence of grounds for withdrawal does not translate into an attorney's right to be paid for work performed unless client's conduct makes continued performance impossible or would cause the attorney to violate an ethical rule);[14] *Staples v. McKnight*, 763 S.W.2d 914 (Tex. App. 1988) (attorney's withdrawal because she thought client intended to present perjured testimony not sufficient justification to warrant compensation where actual falsity of testimony was not established); *Estate of Falco v. Decker*, 188 Cal. App. 3d 1004, 1014 (1987) ("While a personality clash between the parties may provide good reason for allowing the attorney to withdraw, it is not necessarily a justifiable reason for purposes of awarding fees."). If a single email sent by a client questioning the

---

[14] The district court says that it declined to follow the "more stringent" Florida standard set forth in *Faro*. Yet, *Faro* is cited with approval in the Fifth Circuit's opinion in *Augustson* that the district court purports to adopt. *See Augustson*, 76 F.3d at 663.

25

handling of her case and expressing discontent about repeated delay constitutes just cause, the standard becomes meaningless. Demanding clients are not unusual. If just cause can be applied in this manner, it simply becomes a license to walk away from what a lawyer might think is a bad case.

The district court appears to have simply determined whether Ms. Haynes should have been permitted to permissively withdraw. Section 32 of the Restatement (Third) of the Law Governing Lawyers describes the circumstances where a lawyer can voluntarily withdraw from representation. The rationale for lawyer withdrawal rules is that, except in limited circumstances, a lawyer must persist despite unforeseen difficulties and carry through the representation for its intended conclusion. *Id.* § 32 cmt. c. "A lawyer who withdraws, or tries to withdraw, other than as allowed by this Section is subject to professional discipline and breaches a duty to the client." *Id.* § 32 cmt. a (internal citations omitted).

The portion of Section 32 pertinent in this case is (3)(h), which provides: "a lawyer may withdraw from representing a client if . . . the representation has been rendered unreasonably difficult by the client or by the irreparable breakdown of the client-lawyer relationship." *Id.* § 32(3)(h). Withdrawal under this subsection is subject to Subsections (4) and (5). Subsection (4) states that "a lawyer may not withdraw if the harm that withdrawal would cause significantly exceeds the harm to the lawyer or others in not withdrawing." *Id.* § 32(4). Subsection (5) provides

26

that "a lawyer must comply with applicable law requiring notice to or permission of a tribunal when terminating a representation." *Id.* § 32(5).

"Before withdrawing a lawyer must seek to protect the interests of the client by communicating, if feasible, with the client concerning the basis for withdrawal and requesting any corrective action that the client might be able to take." *Id.* § 32 cmt. h(i) (internal citation omitted). Further, Comment n to Section 32 provides:

> a lawyer may be required to consult with a client when a lawyer is considering permissive withdrawal under § 32(3). For example, a lawyer may receive an instruction of the client that the lawyer considers to render the representation unreasonably difficult (see § 32(3)(h)) . . . . The lawyer must consult with the client about the instruction, if withdrawal can be accomplished only with material adverse effect on the client (compare § 32(3)(a)) and if it reasonably appears that reconsideration or other action by the client could, within a reasonable time, remove the basis for the withdrawal.

*Id.* § 32 cmt. n.

"Whether material adverse effect results is a question of fact. The client might have to expend time and expense searching for another lawyer. The successor lawyer might have to be paid what in effect are duplicated fees for becoming familiar with the matter." *Id.* § 32 cmt. h(ii). "In considering permissive withdrawal (Subsection (3)), a lawyer should take into account whether the tribunal may refuse permission. The tribunal may do so, for example, because of adverse effect on the court's docket." *Id.* § 32 cmt. d.

In reviewing whether Ms. Haynes' withdrawal would have a material adverse effect on her client, I turn to the timing of Ms. Haynes' withdrawal. Counsel's withdrawal came at the end of discovery, when the district court had already warned that no further extensions would be granted. Consider the predicament facing Ms. Haynes' client as she sought new counsel. Before undertaking representation, a lawyer would have to assess whether it would be possible to complete discovery, find and retain an expert and file an expert report, deal with the expected dispositive motion, and prepare for trial in the limited time remaining. Would the trial judge agree to yet another extension of the deadlines? With time ticking on the offer of judgment, a prospective lawyer would also have to consider whether it would be possible to give the client informed advice and if the offer was refused: "Will I be paid for my work?" The record demonstrates that Ms. Haynes' withdrawal would have had a material adverse effect on her client, suggesting withdrawal should not have been permitted.

The district court failed to apply the rigorous "just cause" standard sufficient to preserve an entitlement to compensation as described in *Augustson* and followed in the majority of jurisdictions. Instead, it seems to have simply determined (on an after-the-fact basis) whether there was sufficient cause to allow counsel to permissively withdraw. Even under that relaxed standard, there was no consideration of the material adverse effect suffered by the client.

28

**III.**

In sum, judgment should have been entered on April 26, 2012, and the district court lacked jurisdiction to decide the attorney fee dispute. Moreover, Ms. Haynes failed to seek permission to withdraw from the district court as required by the local rules, the Code of Professional Conduct, and decisions of this Court. She failed to consult with her client before terminating the representation, made no showing that she considered whether her client would suffer materially adverse effects by reason of her late termination, and harmed her client by notifying opposing counsel of her intention to withdraw. The trial judge applied an uncertain standard and erroneously awarded compensation to a lawyer who abandoned her client. As a matter of law, there was no justification or cause to withdraw that afforded an entitlement to compensation. I, therefore, respectfully dissent.