*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| KENNETH P. JACOBUS, P.C. and KENNETH P. JACOBUS, | ) ) ) | Supreme Court No. S-16977 |
| Appellants, | ) ) | Superior Court No. 3AN-04-00640 PR |
| v. | ) ) | O P I N I O N |
| UWE KALENKA, Personal Representative of the Estate of ERIC WAYNE KALENKA, | ) ) ) | No. 7455 – June 5, 2020 |
| Appellee. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Mark Rindner, Judge.

Appearances: Kenneth P. Jacobus, Kenneth P. Jacobus, P.C., Anchorage, for Appellants. Alfred Clayton, Jr., Clayton & Diemer, LLC, Anchorage, for Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices. [Stowers, Justice, not participating]

CARNEY, Justice.

## I. INTRODUCTION

After a conflict of interest between an attorney and a long-time client arose during settlement negotiations, the attorney filed a confidential motion with the superior court criticizing his client. The client discharged the attorney and hired new counsel. But the attorney continued to control the settlement funds and disbursed himself his fee,

even though the amount was disputed by the client. The court found that the attorney's actions had violated the rules of professional conduct and ordered forfeiture of most of his attorney's fees. We affirm the holding of the superior court.

## II.     FACTS AND PROCEEDINGS

### A.     Facts

Kenneth Jacobus represented the estate of Eric Kalenka for over a decade after Eric Kalenka was murdered in 2004.[1] Eric's divorced parents, Uwe Kalenka and Dorcas Teall, were the estate's beneficiaries; Uwe Kalenka was the personal representative. Uwe Kalenka retained Jacobus to represent him in the administration of his deceased son's estate and to bring claims against insurance companies and third parties. Kalenka agreed to pay Jacobus's fees by a combination of an hourly rate for work relating to the administration of the estate and a share of any recovery from the claims against insurance companies and third parties.

### B.     Proceedings

Three cases arose from Eric's murder: a criminal case in which Jack Morell was convicted of second-degree murder;[2] a civil suit against an automobile insurer;[3] and a civil suit for wrongful death against the bar that had served alcohol to Morell (the

---

[1]     *See Morrell v. State*, 216 P.3d 574, 575 (Alaska App. 2009); *Kalenka v. Jadon, Inc.*, 305 P.3d 346, 347-48 (Alaska 2013).

[2]     *Morrell*, 216 P.3d at 575.

[3]     *Kalenka v. Infinity Ins. Cos.*, 262 P.3d 602, 602 (Alaska 2011) (holding for insurer because policy did not cover stabbing and killing by uninsured driver after minor collision).

Jadon litigation). Jacobus prevailed in reversing summary judgment for the bar in the Jadon litigation and entered into settlement negotiations.[4]

In 2015 Jacobus filed an ex parte "Confidential Status Report" with the superior court. In it he stated that although the Jadon litigation appeared to be near settlement, he was concerned that Kalenka was unable "to reasonably evaluate any settlement offer." Jacobus believed that Kalenka's emotional state and desire for revenge would lead him to "refus[e] to accept a reasonable settlement offer," and result in a trial with a "substantial chance of a defense verdict." Jacobus believed that refusing to settle would be contrary to the best interests of the estate and the estate's other beneficiary, Teall. Jacobus was also concerned he would not collect his fee given the low likelihood of success at trial. He therefore concluded that he could no longer assist Kalenka.

Jacobus noted that "this report is not being served on anyone else, including . . . Kalenka, my client." He asked the court to permit him to advise Teall of the status of the case, despite Kalenka's explicit order not to involve Teall "in this estate matter at all." He also asked the court to determine whether a new personal representative for the estate should be appointed and whether the personal representative should be ordered to accept the proposed settlement offer. Finally, Jacobus requested that the court determine whether he could continue as Kalenka's attorney.

In response the court ordered Jacobus to serve Kalenka with a copy of the status report. It also denied Jacobus's request for an order allowing him to discuss confidential information with Teall, specifying that he could "not disclose any confidential information to . . . Teall or her attorney unless authorized to do so by . . . Kalenka." Additionally, the court scheduled a confidential hearing to discuss whether Jacobus had a conflict of interest that necessitated his withdrawal and whether

---

[4]     *Kalenka v. Jadon, Inc.*, 305 P.3d at 352.

Kalenka should be removed as the estate's personal representative. It ordered both Jacobus and Kalenka to attend the hearing.

The hearing was held in September 2015. Jacobus and Kalenka were present; Kalenka had retained a new attorney, Alfred Clayton. The court ordered the substitution of counsel, replacing Jacobus with Clayton. The next day Jacobus filed an attorney's lien on funds related to his representation of Kalenka.

Kalenka, represented by Clayton, then settled the Jadon litigation. Following the settlement Clayton wrote Jacobus. This October 2015 letter advised Jacobus that "[t]he settlement check should soon be delivered to [Jacobus's] office" and authorized him "to deposit [it] into [Jacobus's] trust account." The letter also stated that Jacobus was "not authorized to disburse any of the settlement funds from trust until disputes relating to [his] claim for fees and costs are resolved."

Clayton's letter then addressed Jacobus's "claim for a . . . contingent fee from the settlement." The letter listed events that had occurred since "the confidential probate filing" and stated that as a result "it is . . . Kalenka's position you are entitled only to a fee in the amount of $83,333.33" rather than the $112,500 Jacobus claimed he was owed.

Jacobus responded the next day with a letter stating he planned to deposit the settlement funds into an interest-bearing trust account which he would set up. He also stated that he would "disburse the funds to which there is no dispute."

Clayton then wrote to Jacobus requesting a formal accounting of Jacobus's costs and fees and his proposal for a distribution of the settlement check. In this letter, Clayton expressed concern regarding Jacobus's "intentions on a plan for disbursement of funds" and clarified that Jacobus was "not presently authorized to disburse any of the settlement fund."

Jacobus responded a few days later in a lengthy letter with a number of attachments. The letter informed Clayton that Jacobus had already acted regarding the settlement proceeds and had created a new trust account, the "Kalenka Settlement Proceeds Trust," with himself as trustee. Attached to the letter were an ethics opinion from the Alaska Bar Association and the Declaration of Trust for the newly established trust. The Declaration stated that the trust was created because "it appears necessary to protect the interests of all people who are involved with . . . Kalenka." The trust's purposes included protecting Teall's share of the inheritance and Jacobus's and Clayton's fees and costs from interference by Kalenka.

On November 23 Clayton responded to Jacobus's "astonishing letter." He again requested the formal accounting of Jacobus's costs and fees he had sought in his first letter. He then objected to Jacobus's "extraordinary" actions in creating a new trust, unilaterally determining its purposes, and declaring himself its sole trustee, serving without bond. He accused Jacobus of "usurp[ing] the role of [the judge] who actually presides over the Probate proceeding." Clayton described as "[e]ven more astonishing" Jacobus's declaration that the "first thing" he intended to do was "communicate with . . . Teall" after the court had expressly denied his request for permission to do so.

Clayton requested that Jacobus preserve all evidence relating to the creation of the new trust, that he provide Clayton with copies of all documents relating to the trust, and that he preserve all documents and files that related in any way to his representation of Kalenka. He concluded by urging Jacobus to reconsider his actions.

A month after receiving Clayton's letter, Jacobus filed a "Notice of Intent to Violate Court Order," asserting that Alaska Rule of Professional Conduct 1.15(d) required him to violate the August order that forbade him from disclosing any confidential information to Teall without Kalenka's permission. Jacobus claimed that

he was ethically required both to promptly notify Teall that he had received funds and to distribute the amount to which Teall was entitled as a beneficiary of the estate.

After receiving Jacobus's notice and several other pleadings,[5] as well as a "request from the personal representative [of the estate]," the court issued two orders. The first, dated December 30, was an Order for Deposit of Settlement Fund in Registry of Court. That order directed Jacobus, within three days, to issue a check to the clerk of court in the amount of the entire balance of the new trust, including accrued interest, and to terminate the trust.

The court's other order, issued the same day, addressed "the . . . pleadings from . . . Jacobus, who no longer represents anyone in this proceeding and is apparently filing [them] on his own behalf." After ordering Jacobus to serve Clayton with any pleadings that he had attempted to file ex parte, the court denied Jacobus's request for permission to reveal confidential information to Teall. The court rejected his argument that he was ethically required to violate the court's order, reiterating that he was only forbidden to reveal confidential information. The court pointed out that "the fact that a settlement has been reached . . . is a matter of public record."

It then rejected Jacobus's position that "he owes some duty to . . . Teall and that he and he alone can protect her from harm" as "nonsense." The court agreed with Clayton's statement in his November 23 letter that Jacobus was usurping the court's role and making its task to probate the estate more difficult.

---

[5] Jacobus additionally filed an ex parte motion to vacate the court order, a proposed order granting his ex parte motion, an accounting of the settlement funds pursuant to Alaska Rule of Professional Conduct 1.15(d), and an opposition to Kalenka's request for sealed proceedings.

Turning to the Alaska Bar Association Ethics Opinion on which Jacobus claimed to rely,[6] the court observed that "he seems to ignore [a] pertinent part of that Opinion" which specifically stated that "[t]he attorney does not . . . have a duty to advise heirs or creditors of the estate, and is prohibited from informing beneficiaries or the court of facts that would be adverse to the personal representative, or from taking any position hostile to the personal representative's interests." The court then stated that Jacobus's actions "appear to violate this duty." The court advised Jacobus that his interpretation "[wa]s wrong and that any violation of this court's order [would] result in significant sanctions."

Jacobus moved on January 7 to vacate the court's order requiring him to deposit the settlement fund in the court registry and to enter a substitute order. Responding to the court's statement that he no longer represented anyone in the matter, Jacobus asserted that he had standing to participate because Kalenka's actions affected him directly and because he could be "correctly characterized as a creditor of the estate." Clayton opposed the motion on January 20, arguing that the December 30 orders were appropriate because they "eliminated confusion, reduced the prospect of future dispute, and admonished Jacobus against actions which 'harm the beneficiaries while serving no discernible purpose.' "

On January 27 the court convened a confidential status hearing and discussed Jacobus's actions, his January 7 motion, and how to proceed. Clayton, Jacobus, and Kalenka were present. After admonishing Jacobus for failing to deposit the money in the court registry despite the December 30 order and for filing a proposed

---

[6]     *See* Alaska Bar Ass'n Ethic Comm., Ethics Op. 91-2 (1991) (discussing responsibilities of attorney representing personal representative of estate when conflict exists between personal representative and heirs).

order despite not representing any party in the case, the court ordered Jacobus to deposit the $337,500 settlement fund into the court registry by January 29.

On January 28 and 29 Jacobus made two payments into the court registry totaling $287,537.15. On February 5 he filed a motion requesting that Kalenka clarify the amount he believed Jacobus was owed in fees. Jacobus further requested that he be authorized to retain the remaining $50,000 and that $33,333.33 be refunded to him from the court registry, alleging that Kalenka admitted in his October 2015 letter that Jacobus was entitled to this amount. Jacobus explained that he had used $50,000 to pay for expenses he had incurred and was unable to repay that amount by the date the court ordered.

On February 18 Kalenka moved to have Jacobus held in contempt for failing to pay the entire amount into the court registry, and requested an order requiring Jacobus to provide the records related to his handling of the settlement funds up to that point. In early March the court again ordered Jacobus to deposit the entire amount of the settlement in the court registry and scheduled a hearing for March 29 for Jacobus to show cause why he should not be held in contempt.

Shortly after the March order Jacobus filed a notice of claim against the estate for $112,500 from the Jadon settlement as well as an additional $15,000 claim from the insurance case which Jacobus argued "could have settled for at least $45,000." He also filed claims for punitive damages, fees for appellate work, and fees from any future recovery. On the same day, he made two deposits into the court registry — the first for $30,000 and the second for $20,000 — in compliance with the court's March order requiring him to deposit the remaining $50,000 with the court.

The court held the contempt hearing on March 29 and again ordered Jacobus to provide all records related to his handling of the settlement proceeds and all

files related to the Kalenka cases to Clayton. The court also found the motion for contempt moot, as Jacobus had deposited the funds.

In April Kalenka petitioned the court to partially disallow Jacobus's creditor's claims.[7] Kalenka argued Jacobus was entitled to only the agreed upon contingency fee and that he was not entitled to recover on any claims other than the contingency fee for the Jadon litigation. Kalenka also argued Jacobus was entitled only to the agreed 25% of $250,000 (or $62,500), the settlement amount Jacobus had secured before being removed as counsel, rather than 25% of the $337,500 that the estate actually received. In addition he argued Jacobus's recovery should be offset by costs incurred by the estate following his replacement as counsel.

In July the court awarded Jacobus a 25% contingency fee from the actual amount of the Jadon settlement, $337,500. The court then reduced Jacobus's fee of $84,375 by the amount of expenses incurred by the estate after Jacobus was removed as counsel, as well as by the amount of expenses the estate was expected to incur in the future. The court ordered the resulting $46,107.43 to be disbursed from the court registry to Jacobus. The court denied Jacobus's request for other fees he claimed were due.

Jacobus moved for relief from the court's July order in late December 2016. He asked not to be ordered to pay for the estate's new attorney and that he be awarded his full fees and associated costs from the Jadon and insurance cases. Jacobus argued, among other things, that relief was necessary because his procedural due process rights had been violated by the court.

---

[7]    *See* AS 13.16.475(b) ("Upon the petition of the personal representative or of a claimant in a proceeding for the purpose, the court may allow in whole or in part any claim or claims presented to the personal representative or filed with the clerk of the court . . . .").

A few days later, Jacobus filed a motion for disbursement of the $46,107.43 that the court had ordered in July. Kalenka opposed Jacobus's motions and filed a cross-motion to further reduce Jacobus's fee due to the additional costs the estate had incurred responding to Jacobus's filings.

At a status conference held in March 2017, the court denied Jacobus's motion for distribution of funds and scheduled a confidential hearing for August to discuss the parties' claims against each other. The court stated it would determine the amount of funds to which the parties were entitled. At the August hearing Jacobus, Kalenka, and Clayton testified about the history of the case. The court also heard argument concerning the allocation of fees and potential violations of Jacobus's duty of loyalty to Kalenka.

On September 18 the court issued a final order resolving Jacobus's claims against the estate. After defining the issue as "what fee an attorney is entitled to when he or she is discharged for cause or without cause," the court noted that there was little relevant Alaskan law. It therefore turned to case law in other states. After considering the approaches taken by other courts, the superior court determined that the test used by the Louisiana Supreme Court in *O'Rourke v. Cairns*,[8] and the Maryland Court of Appeals in *Somuah v. Flachs*,[9] was the rule "most persuasive in light of precedent, reason, and policy." It used this "reasonable value" test to determine the fees owed to Jacobus.[10]

The court separately addressed each fee and cost that Jacobus had claimed he was owed. Starting with the Jadon litigation, the court detailed the calculations it

---

[8]    683 So.2d 697, 704 (La. 1996).

[9]    721 A.2d 680, 691-92 (Md. App. 1998).

[10]    *Id.*

made in its July 2016 order. The court had determined Jacobus's fee by first calculating what he would have been entitled to had he not been discharged, and then subtracting the expenses the estate incurred to complete the work Jacobus had begun. After explaining its prior calculations, the court then considered the nature and gravity of the actions leading to Jacobus's discharge and his subsequent behavior; the court found that Jacobus "ha[d] seriously violated the duty of loyalty owed to his client." It then concluded that "Jacobus'[s] breach of his duties to his client [wa]s so egregious that a complete forfeiture of the Jadon fee [wa]s warranted."

The court next determined that Jacobus was owed no fee from the insurance case because his "contingency fee agreement did not entitle [him] to a fee based on settlements that were never accepted." The superior court also denied Jacobus's claims for additional fees and denied him reimbursement for the defense of ethics complaints Kalenka had filed against him.

The court did award Jacobus $4,213.10 in hourly fees associated with the administration of the estate as set forth in his fee agreement with the estate. The court found that the work had been performed before Jacobus's dismissal and had benefitted the estate. The superior court forwarded a copy of its written decision to the Alaska Bar Association, noting that it "chronicle[d] actions by . . . Jacobus that may constitute violations of the Alaska Rules of Professional Conduct" and requesting that the Bar review the matter and "determine on the merits whether any discipline is warranted."

In December 2017 the estate filed a motion to disburse the funds in satisfaction of Jacobus's creditor claim for $4,213.10, as the court had ordered in September. Jacobus filed a response requesting the court enter the final judgment so that he could appeal. In January 2018 the court denied Jacobus's request to enter final judgment because "[d]isbursement of funds is a purely administrative matter."

Jacobus appeals the superior court's orders prohibiting him from revealing confidential information to Teall; its findings that he violated his duties to his client; and the order forfeiting the majority of his fees.

## III.   STANDARD OF REVIEW

We apply our independent judgment to questions of law.[11] Factual findings are reviewed for clear error and will not be set aside unless "review of the entire record leaves us with a definite and firm conviction that a mistake has been made."[12] We review a "court's determination of the reasonableness of attorney's fees . . . in probate matters" for abuse of discretion.[13]

## IV.   DISCUSSION

### A.   The Superior Court's Order Prohibiting Jacobus From Discussing Confidential Matters Did Not Require Jacobus To Violate His Ethical Duties.

Jacobus argues that the superior court's August 2015 order that he "not disclose any confidential information" or "communicate with [Teall] about the Offer of Judgment without permission from his client" was improper. He claims this order forced him to violate Alaska Rule of Professional Conduct 1.15(d), which states:

> Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client,

---

[11]    *Alaska Pub. Def. Agency v. Superior Court*, 450 P.3d 246, 251 (Alaska 2019).

[12]    *Adkins v. Collens*, 444 P.3d 187, 203 n.53 (Alaska 2019).

[13]    *In re Estate of Johnson*, 119 P.3d 425, 430 (Alaska 2005); *see also Martin v. Dieringer*, 108 P.3d 234, 240 (Alaska 2005) (vacating and remanding award of fees to attorney and personal representative fees for consideration of breaches of fiduciary duties and acts of bad faith).

a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding the funds or property.

Jacobus also claims that the court's December 2015 order prevented him from discussing matters with potential witnesses or third parties and that this prejudiced his defense against Kalenka's allegations during the August 2017 evidentiary hearing regarding funds that Jacobus had distributed to himself.

But Jacobus misinterprets both Rule 1.15(d) and the court's order regarding communication with Teall. Rule 1.15(d) directs an attorney to promptly notify a client or third party upon receipt of funds or property in which the client or third party has an interest. The order prohibiting Jacobus from speaking with Teall only proscribed the "disclos[ure of] any confidential information." Jacobus could thus have complied with both the order and Rule 1.15(d)'s directive simply by notifying Teall of the existence of settlement funds.

And contrary to Jacobus's arguments, the December 2015 order made clear he was permitted to communicate with Teall or others. This order reiterated that Jacobus was ordered in August to refrain only from disclosing confidential information unless authorized by Kalenka; it did not prohibit Jacobus from revealing non-confidential information. Noting that the Jadon file was not confidential, the court stated that nothing in its August order prevented Jacobus from sharing information with Teall that a settlement had been reached.

As the superior court made clear, its order did not require any violation of Jacobus's professional or ethical duties. The superior court did not err by ordering Jacobus not to disclose confidential information without Kalenka's permission.

**B.    The Superior Court Did Not Err By Finding Jacobus Violated His Duty Of Loyalty.**

The superior court found that Jacobus "continually violated" the duty of loyalty to his client, Kalenka. Jacobus filed pleadings that were directly adverse to Kalenka, ignored Kalenka's instructions, and urged the court to take actions that were contrary to the instructions he had received from Kalenka.

Although he does not challenge the court's findings, Jacobus argues that the court erred by concluding that his actions with respect to the settlement funds constituted a breach of his duty to Kalenka and that it justified forfeiture of his fee. The superior court found Jacobus set up a trust arrangement in violation of both Kalenka's instructions and the court's order. He created a new trust account for the settlement funds, separate from his firm's trust account, which he entitled "Kalenka Settlement Proceeds Trust" and appointed himself trustee, without posting a bond. The Declaration of Trust stated that the trust was created because "it appears necessary to protect the interests of all people who are involved with . . . Kalenka." Its purposes were to protect "the integrity of the legal system," Teall's share of the inheritance, and Jacobus's and Clayton's fees and costs from interference by Kalenka.

The court found the creation of the trust was a violation of the duties he owed to Kalenka. Attorneys owe both a fiduciary duty and a duty of loyalty to their

clients,[14] and a lawyer's efforts must be for the benefit of the client.[15]  Actions taken not for the benefit of the client are a violation of the duty of loyalty, and thus a violation of a lawyer's ethical duties.  Here, the court found that Jacobus established a trust in order to protect the fee he believed Kalenka owed him and to protect the other beneficiary of the estate from Kalenka, putting his and Teall's interests before Kalenka's.  Because the trust was created to benefit others and not his client, the court found that Jacobus violated the duties owed to Kalenka.  Jacobus does not challenge the superior court's underlying factual findings, and the court did not err by concluding that Jacobus violated his fiduciary duty and duty of loyalty by creating the trust.

Jacobus does challenge the superior court's finding that he withdrew funds from this trust without authorization.  Jacobus argues that the fees he disbursed to himself were not in dispute.  He refers to the October 2015 letter from Clayton after Clayton replaced him as Kalenka's attorney.  Jacobus claims that Clayton's statement that Jacobus was "entitled only to a fee in the amount of $83,333.33" concedes that he is owed $83,333.33 from the settlement funds.  But Jacobus ignores Clayton's directions on the previous page that he was "not authorized to disburse any of the settlement funds from trust until disputes relating to [his] claim for fees and costs [were] resolved," and that he was to "retain all settlement funds in [his] trust account."

---

[14] *Strickland v. Washington*, 466 U.S. 668, 692 (1984) (describing duty of loyalty as "the most basic of counsel's duties"); RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 16 (AM. LAW INST. 2000) cmt. b & c; *see* Alaska R. Prof. Conduct 1.7 cmt. [1] ("Loyalty and independent judgment are essential elements in the lawyer's relationship to a client."); Alaska R. Prof. Conduct Rule 1.15 cmt. [1] ("A lawyer should hold property of others with the care required of a professional fiduciary.").

[15] RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 16 cmt. c.

The court rejected Jacobus's argument, noting "Jacobus characterized this sum as an 'undisputed' part of the fee to which he believed he was entitled. The fee, of course, was disputed resulting in further motion practice." The court then detailed the continuing dispute over Jacobus's entitlement to fees, spanning over two years.

The superior court did not err by concluding that Jacobus violated his duty to Kalenka when he disbursed funds to himself. Clayton's October 2015 letter explicitly directed Jacobus to refrain from disbursing funds because of the ongoing dispute over the amount to which he was entitled. Jacobus therefore violated his duty of loyalty by paying himself $83,333.33. By filing pleadings and requesting authorization to take actions that were contrary to Kalenka's interests and instructions to him, Jacobus also violated his duty of loyalty to his client. Further, by creating a trust for the specific purpose of protecting himself and third parties from his client after his client discharged him, and by paying himself from the trust funds despite an ongoing dispute over fees, Jacobus committed additional violations of his duty of loyalty to Kalenka. The superior court did not err by concluding that Jacobus had committed "egregious" violations of his ethical duties.

C. **The Superior Court Did Not Abuse Its Discretion By Ordering Forfeiture Of Jacobus's Entire Fee From The Jadon Settlement.**

Jacobus argues that the court erred by adopting the reasonable value test used by the Louisiana Supreme Court and the Maryland Court of Appeals to determine whether he was entitled to legal fees after being discharged as Kalenka's attorney. He argues that the superior court should have used either the rule adopted by the Missouri Supreme Court or the rule adopted by the California Supreme Court. In *International Materials Corp. v. Sun Corp., Inc.* the Missouri court held that complete forfeiture of attorney's fees was "warranted only when a lawyer's clear and serious violation of a duty to a client is found to have destroyed the client-lawyer relationship and thereby the

justification for the lawyer's claim to compensation."[16]  And the California court, in *Fracasse v. Brent*, held that a discharged attorney is entitled to "the reasonable value of the services he has rendered up to the time of discharge."[17]  Finally, Jacobus contends that even if it selected the appropriate test, the superior court misapplied it.

Kalenka responds that Jacobus failed to articulate any reason why the reasonable value test was inappropriate and that this court should conclude that he forfeited this argument.  Kalenka also argues that even under the alternative tests Jacobus proposed, he would receive no fee.  Kalenka asserts that under the Missouri court's *International Materials Corp.* rule, forfeiture still would have been warranted because the superior court found that Jacobus's conduct was a serious breach of his duty of loyalty.  He also claims that the California court's *Fracasse* decision is distinguishable because the "discharge for cause" at issue there did not involve breach of an attorney's ethical duty, as here, but merely a client's loss of faith in an attorney.

### 1.    Any error in overlooking Alaska precedent was harmless.

The superior court defined its task as determining "what fee an attorney is entitled to when he or she is discharged for cause or without cause."  And it accurately observed that there was little Alaskan law on the topic.  In *In re Estate of Brandon* we recognized "the general rule . . . that once a conflict of interest or other ethical violation has been established, the attorney is prohibited from collecting fees for his or her services."[18]  We have discussed that general rule only two other times, in *Moses v.*

---

[16]     824 S.W.2d 890, 895 (Mo. 1992).

[17]     494 P.2d 9, 14 (Cal. 1972).

[18]     902 P.2d 1299, 1317 (Alaska 1995) (citing *Moses v. McGarvey*, 614 P.2d 1363, 1372 (Alaska 1980)) (remanding to determine whether conflict actually existed).

*McGarvey*[19] and in *Integrated Resources Equity Corp. v. Fairbanks North Star Borough*.[20] In each of those cases, the attorneys had assumed representation of a client at time when it was alleged that the attorneys had a conflict of interest.[21]

Jacobus, however, provided Kalenka with conflict-free representation for years. The superior court therefore had to determine to what extent he was entitled to compensation for that representation. The "general rule" provides no guidance about separating compensation for the period before the conflict arose from the period afterward. The court appropriately turned instead to other jurisdictions' consideration of the issue.

The reasonable value test that the court adopted from the Louisiana court's *O'Rourke* case and the Maryland court's *Somuah* case allowed it to calculate the fees to which Jacobus was entitled while remaining consistent with *Brandon*'s "general rule." Jacobus's conflict of interest was clear by the time he filed his "Confidential Status Report." From that point on he was not entitled to any fee — according to either *Brandon* or the reasonable value test.

Because Jacobus had a personal conflict of interest with his client at the latest by the time he filed the Confidential Status Report with the court, he was entitled only to fees earned prior to that date. Jacobus was therefore entitled to his apportioned fees, such as his work administering the estate, and would have been entitled to his non-

---

[19]     614 P.2d 1372.

[20]     799 P.2d 295, 303 (Alaska 1990).

[21]     In *Moses* we determined that because a conflict of interest existed, the attorney was not entitled to any fee. 614 P.2d at 1371-73. And we determined that the rule did not apply in *Integrated Resources Equity Corp.* because no conflict of interest existed. 799 P.2d at 303.

apportioned contingency fee had he not "wilful[ly] and deliberate[ly] breach[ed] his contract of service."[22]

### 2. Jacobus failed to explain why the superior court should have employed a different test.

In his brief Jacobus argues that "[t]he trial court should have adopted the rule of" *International Materials Corp. v. Sun Corp., Inc*,[23] and that it "also should have adopted a rule similar to *Fracasse v. Brent*."[24] He summarizes each case's rule in a sentence, but provides no legal argument or reasoning why these rules are more appropriate or even how they differ meaningfully from the reasonable value test.

We can discern no substantive difference between the *International Materials Corp.* and the reasonable value tests. Both require forfeiture of fees for a serious breach of the duty of loyalty. The superior court concluded Jacobus's breach was "egregious," a description that more than satisfies *International Materials Corp.*'s requirement of a "clear and serious violation . . . destroy[ing] the client-lawyer relationship."[25] Under either test it was not an abuse of discretion to forfeit Jacobus's contingent fee in its entirety.[26]

---

[22] RESTATEMENT (SECOND) OF AGENCY § 469 (AM. LAW INST. 1958); *see also Miller v. Paul*, 615 P.2d 615, 620 n.10 (Alaska 1980).

[23] 824 S.W.2d 890, 895 (Mo. 1992).

[24] 494 P.2d 9, 14-15 (Cal. 1972).

[25] *See* 824 S.W.2d at 895.

[26] *See also* RESTATEMENT (SECOND) OF AGENCY § 469 ("[I]f such conduct constitutes a wilful and deliberate breach of [an attorney's] contract of service, he is not entitled to compensation even for properly performed services for which no compensation is apportioned [such as work done under a contingency arrangement]."

And as Kalenka argues, the *Fracasse* test is distinguishable from the reasonable value test and inapplicable here. While the *Fracasse* court's quantum meruit rule is generally the same as the reasonable value test, California courts do not distinguish between "for cause" and "without cause" discharges of an attorney in applying the test.[27] The *Fracasse* test therefore fails to address the effect of an attorney's "egregious" violation of duties to a client on the attorney's entitlement to compensation. Because Jacobus makes no argument and we see no reason why the *International Materials Corp.* and *Fracasse* tests would be more appropriate or would lead to a different outcome, we reject his claim that the superior court erred when it adopted the reasonable value test.

### 3. The superior court did not err in its application of the reasonable value test.

Jacobus's final argument is that the superior court incorrectly applied its chosen test. Jacobus takes issue not with the test, which he characterizes as allowing the entire fee to be forfeited "only for serious and intentional breaches of ethical duties to the client," but with the court's finding that such a breach of ethical duty occurred.

But we have already determined that the superior court did not err by concluding that Jacobus breached his duty of loyalty by working actively against his client's interests and by disbursing disputed fees to himself without Kalenka's permission and that Jacobus's breach of his duties was "egregious." Thus, even under Jacobus's characterization of the reasonable value test, as described in *O'Rourke*, *Somuah*, or *International Materials Corp.*, his breaches of ethical duties were severe enough that the superior court was within its discretion to forfeit Jacobus's contingency fee.

---

[27] 494 P.2d at 13.

In its 17-page order the superior court carefully considered the evidence presented about each of the alleged ethical violations and Jacobus's stated justifications, separately analyzed the work Jacobus performed for Kalenka in each stage of the decade-long litigation, and reviewed evidence documenting the costs the estate incurred responding to motions and pleadings from Jacobus after he was replaced. The court also looked at the work that Jacobus had performed related to the administration of the estate. The court concluded that the serious and intentional nature of Jacobus's actions in violation of his ethical duties required forfeiture of his fee from the Jadon settlement.

Nothing in its order or in Jacobus's brief indicates that the court acted in a manner that was arbitrary, capricious, manifestly unreasonable, or that was the result of an improper motive. And none of the court's factual findings regarding Jacobus's breach of his duty of loyalty are clearly erroneous. Because the evidence supports the court's finding that his violation of the duties he owed his client was egregious, the superior court did not abuse its discretion when it decided that Jacobus's contingent fee should be forfeited.

## V. CONCLUSION

The superior court's decision is AFFIRMED.

# In the Supreme Court of the State of Alaska

Kenneth P. Jacobus, P.C. and
Kenneth P. Jacobus,

                    Appellants,

        v.

Uwe Kalenka, Personal Representative
of the Estate of Eric Wayne Kalenka,

                    Appellee.

Trial Court Case No. **3AN-04-00640PR**

Supreme Court No. **S-16977**

## Order
Withdraw an Opinion and Reissue

Date of Order: **6/5/2020**

Before:  Bolger, Chief Justice, Winfree, Maassen, and Carney, Justices.
[Stowers, Justice, not particpating].

**IT IS ORDERED, SUA SPONTE**:

1.      Opinion No.  7452, issued on May 22, 2020 is **WITHDRAWN**.

2.      Opinion No.  7455 issued in its place today.

3.      The changes in the opinion are located at pages 17 and 18.

Entered at the direction of the court.

Clerk of the Appellate Courts

/s/ M.  Montgomery

_____
Meredith Montgomery

cc:    Supreme Court Justices
       Judge Rindner
       Publishers

Distribution:

Mail:
Kenneth P Jacobus
Kenneth P. Jacobus, P.c.
Alfred T Clayton Jr
Clayton & Diemer, LLC